## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Hon. Cathy L. Waldor |
| v. | : | Magistrate. No. 18-7038 (CLW) |
| MELISSA REYNOLDS, a/k/a "Melissa Shawn Reynolds-Herod," a/k/a "Melissa James," GERMAINE KING, HENRY GRADY JAMES IV, ARTHUR N. MARTIN, III, and DANIEL K. DXRAMS, a/k/a "Daniel Kusi," a/k/a "Danny D. Dxrams," a/k/a "Randy N. Amoateng" | : | **CRIMINAL COMPLAINT** |

I, Michael Hooper, being duly sworn, state the following is true and correct to the best of my knowledge and belief:

### SEE ATTACHMENT A

I further state that I am a Special Agent with the Federal Bureau of Investigation, and that this complaint is based on the following facts:

### SEE ATTACHMENT B

continued on the attached pages and made a part hereof.

_____
Michael Hooper, Special Agent
Federal Bureau of Investigation

Sworn to before me, and
subscribed in my presence

March 19, 2018                     at    Newark, New Jersey
Date                                          City and State

Honorable Cathy L. Waldor
United States Magistrate Judge
Name & Title of Judicial Officer

_____
Signature of Judicial Officer

## **ATTACHMENT A**

### **Count One**
(Bank Fraud—Elizabeth, New Jersey Residential Home)

From in or about May 2014 through in or about October 2014, in Union County, in the District of New Jersey, and elsewhere, defendant

Melissa Reynolds,
a/k/a "Melissa Shawn Reynolds-Herod,"
a/k/a  "Melissa James"

executed, and attempted to execute, a scheme and artifice to defraud a financial institution, namely, the financial institution described in Paragraph 4a of Attachment B, and to obtain money, funds, and assets owned by and under the custody and control thereof, by means of false and fraudulent pretenses, representations, and promises, as described in Paragraphs 4c through 4h of Attachment B, in violation of Title 18, United States Code, Sections 1344 and 1349.

## Count Two
(Bank Fraud—Newark, New Jersey Residential Home)

From in or about July 2014 through in or about May 2017, in Essex and Union Counties, in the District of New Jersey, and elsewhere, defendant

Melissa Reynolds,
a/k/a "Melissa Shawn Reynolds-Herod,"
a/k/a "Melissa James"

executed, and attempted to execute, a scheme and artifice to defraud a financial institution, namely, the financial institution described in Paragraph 5a of Attachment B, and to obtain money, funds, and assets owned by and under the custody and control thereof, by means of false and fraudulent pretenses, representations, and promises, as described in Paragraphs 5f through 5p of Attachment B, in violation of Title 18, United States Code, Sections 1344 and 1349.

**Count Three**
(Conspiracy to Commit Bank and Mail Fraud—
Hillside, New Jersey Residential Home)

From in or about May 2016 through in or about June 2017, in Essex and Union Counties, in the District of New Jersey, and elsewhere, defendants

Melissa Reynolds,
a/k/a "Melissa Shawn Reynolds-Herod,"
a/k/a "Melissa James,"
and
Henry Grady James IV

knowingly and intentionally conspired and agreed with each other and others to:

a. execute a scheme and artifice to defraud a financial institution, namely, the financial institution described in Paragraph 6a of Attachment B, and to obtain money, funds, and assets owned by and under the custody and control thereof, by means of false and fraudulent pretenses, representations, and promises, as described in Paragraphs 6c through 6g of Attachment B, contrary to Title 18, United States Code, Section 1344, and

b. devise and intend to devise a scheme and artifice to defraud the financial institution described in Paragraph 6a of Attachment B and the United States Department of Housing and Urban Development, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, as described in Paragraphs 6c through 6g of Attachment B, and for the purpose of executing the scheme and artifice to defraud, caused to be placed in a United States post office or other authorized depository for mail matter, items to be delivered by the United States Postal Service according to the directions thereon, and caused to be deposited items to be sent and delivered by private and commercial interstate carriers, contrary to Title 18, United States Code, Section 1341.

In violation of Title 18, United States Code, Section 1349.

**Count Four**
(Conspiracy to Commit Bank and Mail Fraud—
West Orange, New Jersey Residential Home)

From in or about July 2016 through in or about February 2017, in Essex and Union Counties, in the District of New Jersey, and elsewhere, defendants

Melissa Reynolds,
a/k/a "Melissa Shawn Reynolds-Herod,"
a/k/a  "Melissa James,"
and
Arthur N. Martin, III

knowingly and intentionally conspired and agreed with each other and others to:

a.    execute a scheme and artifice to defraud a financial institutions, namely, the financial institution described in Paragraph 6a of Attachment B, and to obtain money, funds, and assets owned by and under the custody and control thereof, by means of false and fraudulent pretenses, representations, and promises, as described in Paragraphs 7b through 7e of Attachment B, contrary to Title 18, United States Code, Section 1344, and

b.    devise and intend to devise a scheme and artifice to defraud the financial institution described in Paragraph 6a of Attachment B, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, as described in Paragraphs 7b through 7e of Attachment B, and for the purpose of executing the scheme and artifice to defraud,  caused to be placed in a United States post office or other authorized depository for mail matter, items to be delivered by the United States Postal Service according to the directions thereon, and caused to be deposited items to be sent and delivered by private and commercial interstate carriers, as set forth below, contrary to Title 18, United States Code, Section 1341.

In violation of Title 18, United States Code, Section 1349.

**Count Five**
(Conspiracy to Commit Bank and Mail Fraud—
Bowie, Maryland Residential Home)

From in or about  June 2016 through in or about February 2017, in Essex and Union Counties, in the District of New Jersey, and elsewhere, defendant

Melissa Reynolds,
a/k/a "Melissa Shawn Reynolds-Herod,"
a/k/a  "Melissa James"

knowingly and intentionally conspired and agreed with Co-Conspirator One and others to:

      a.     execute a scheme and artifice to defraud a financial institutions, namely, the financial institution described in Paragraph 8a of Attachment B, and to obtain money, funds, and assets owned by and under the custody and control thereof, by means of false and fraudulent pretenses, representations, and promises, as described in Paragraphs 8c through 8g of Attachment B, contrary to Title 18, United States Code, Section 1344, and

      b.     devise and intend to devise a scheme and artifice to defraud the financial institution described in Paragraph 8a of Attachment B, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, as described in Paragraphs 8c through 8g of Attachment B, and for the purpose of executing the scheme and artifice to defraud, caused to be placed in a United States post office or other authorized depository for mail matter, items to be delivered by the United States Postal Service according to the directions thereon, and caused to be deposited items to be sent and delivered by private and commercial interstate carriers, contrary to Title 18, United States Code, Section 1341.

In violation of Title 18, United States Code, Section 1349.

## Count Six
(Mail Fraud—Student Loan Fraud)

From in or about January 2017 through in or about March 2017, in Union County, in the District of New Jersey, and elsewhere, defendant

Melissa Reynolds,
a/k/a "Melissa Shawn Reynolds-Herod,"
a/k/a  "Melissa James"

knowingly and willfully devised and intended to devise a scheme and artifice to defraud the United States Department of Education and to obtain money and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, as described in Paragraphs 9b through 9d of Attachment B, and for the purpose of executing the scheme and artifice to defraud, caused to be placed in a United States post office or other authorized depository for mail matter, items to be delivered by the United States Postal Service according to the directions thereon, and caused to be deposited items to be sent and delivered by private and commercial interstate carriers, in violation of Title 18, United States Code, Sections 1341 and 1349.

## **Count Seven**
(Conspiracy to Commit Mail Fraud—Luxury Vehicle Fraud)

From in or about January 2017 through in or about March 2017, in Union County, in the District of New Jersey, and elsewhere, defendants

Melissa Reynolds,
a/k/a "Melissa Shawn Reynolds-Herod,"
a/k/a  "Melissa James,"
Germaine King, and
Daniel K. Dxrams,
a/k/a "Daniel Kusi"
a/k/a "Danny D. Dxrams"
a/k/a "Randy N. Amoateng"

knowingly and intentionally conspired and agreed with each other and others to devise and intend to devise a scheme and artifice to defraud the companies described in Paragraph 11a of Attachment B, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, as described in Paragraphs 11b through 11i of Attachment B, and for the purpose of executing the scheme and artifice to defraud, caused to be placed in a United States post office or other authorized depository for mail matter, items to be delivered by the United States Postal Service according to the directions thereon, and caused to be deposited items to be sent and delivered by private and commercial interstate carriers, as set forth below, contrary to Title 18, United States Code, Section 1341, in violation of Title 18, United States Code, Section 1349.

**Count Eight**
(Mail Fraud—Germaine King)

In or about August 2014, in Union County, in the District of New Jersey, and elsewhere, defendant

Germaine King

knowingly and willfully devised and intended to devise a scheme and artifice to defraud the United States Department of Treasury and the entities described in Paragraph 10c of Attachment B, and to obtain money and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, as set forth below in Paragraphs 10c through 10d of Attachment B, and for the purpose of executing the scheme and artifice to defraud,  caused to be placed in a United States post office or other authorized depository for mail matter, items to be delivered by the United States Postal Service according to the directions thereon, and caused to be deposited items to be sent and delivered by private and commercial interstate carriers, in violation of Title 18, United States Code, Sections 1341 and 1349.

## Count Nine
(False Statements to the United States)

On or about January 27, 2017, in Essex County, in the District of New Jersey and elsewhere, defendants

Melissa Reynolds,
a/k/a "Melissa Shawn Reynolds-Herod,"
a/k/a  "Melissa James,"
and
Germaine King

in a matter within the jurisdiction of the judicial branch of the United States, namely, the United States District Court for the District of New Jersey, knowingly and willfully made materially false, fictitious, and fraudulent statements and representations and made and used false writings and documents knowing them to contain materially false, fictitious, and fraudulent statements and entries, as described in Paragraph 4m of Attachment B, in violation of Title 18, United States Code, Sections 1001 and 2.

## ATTACHMENT B

I, Michael Hooper, am a Special Agent of the Federal Bureau of Investigation ("FBI"). My experience with the FBI, as a Special Agent and Analyst, has included the investigation of cases involving various financial frauds and other federal criminal violations of law. I have received training and have gained experience in the investigation of various crimes, including fraud. I have knowledge of the facts set forth herein through my personal participation in this investigation and through oral and written reports from other federal agents or other law enforcement officers. Where I assert that an event took place on a particular date, I am asserting that it took place on or about the date alleged. Where I assert a value or amount, I am asserting an approximate value or amount. Where statements of others are related herein, including statements that were consensually recorded, these statements are related in substance and part. Because this Criminal Complaint is being submitted for the limited purpose of establishing probable cause for the issuance of arrest warrants against the named defendants, I have not set forth every fact known to me or other law enforcement officers concerning this investigation. Rather, I have only set forth those facts that I believe are sufficient to show probable cause exists to believe that the defendants have committed the offenses set forth in Attachment A.

**The Defendants and Other Parties**:

1.    At all times relevant to this Criminal Complaint:

a.    Defendant Melissa Reynolds, a/k/a "Melissa Shawn Reynolds-Herod" and "Melissa James" ("Reynolds"), was a resident of Elizabeth, New Jersey, and employed at a hospital in New Jersey.

b.    Defendant Germaine King ("King") was a resident of Elizabeth, New Jersey and resided with Reynolds.

c.    Henry Grady James IV ("James") was a resident of Hillside, New Jersey and employed as a principal at a school in Essex County, New Jersey.

d.    Arthur N. Martin, III ("Martin") was a resident of West Orange, New Jersey.

e.    Daniel K. Dxrams, a/k/a "Daniel Kusi," "Danny D. Dxrams," and "Randy N. Amoateng" ("Dxrams") was a resident of Maplewood, New Jersey and employed by the New Jersey Department of Children and Families.

f.    An individual not named as a defendant herein was a co-conspirator ("Co-Conspirator One").

## Overview of the Conspiracy and Scheme to Defraud

2.      Reynolds, King, James, Martin, Dxrams, and their co-conspirators have conspired to and have defrauded and attempted to defraud corporations and the United States through a fraudulent "debt elimination" scheme.  In total, Reynolds and her co-conspirators caused and attempted to cause over $3 million in financial losses.

3.      As part of and in furtherance of the conspiracies and schemes to defraud, Reynolds, King, James, Martin, Dxrams, and their co-conspirators:

        a.      made, used, and mailed wholly fraudulent money orders, cashier's checks, and other fictitious documents to banks, mortgage lending businesses and other lenders, and agencies of the United States, to unlawfully payoff and discharge home mortgages, loans, and other legitimate debts;

        b.      made, used, and mailed false and fictitious documents to the United States Department of Treasury ("Department of Treasury") and the Internal Revenue Service ("IRS") to further the scheme; and

        c.      filed in federal court in the District of New Jersey false and fraudulent documents and information to hamper, disrupt, and obstruct the lenders' ability to lawfully collect debts.

## Execution of the Scheme to Defraud

4.      Financial Institution One and HUD (Elizabeth, New Jersey)

        a.      Financial Institution One, headquartered in Pennsylvania, was a "financial institution" within the meaning of Title 18, United States Code, Sections 20 and 27.  Two mortgage service companies were subsidiaries of Financial Institution One (collectively "Subsidiary One").[1]

        b.      In or about March 2013, Reynolds obtained a mortgage from Financial Institution One, in the approximate amount of $417,276, for the purchase of a residential home in Elizabeth, New Jersey (the "Elizabeth Residence").  This loan was secured by a mortgage on the Elizabeth Residence. In exchange for this loan, Reynolds, as sole borrower, agreed to repay the

---

        1.      A private corporation owned (1) Financial Institution One; and (2) a mortgage service company with the initials S.M.S.  S.M.S. collected and processed mortgage payments on behalf of Financial Institution One.  S.M.S. sub-contracted the collection of Reynolds' mortgage payments to a second mortgage service company with the initials R.C.  Ultimately, S.M.S. acquired R.C.'s mortgage service business. Accordingly, S.M.S. and R.C. are collectively referred to as "Subsidiary One."

loan's principal sum plus interest within thirty years. Thereafter, Reynolds ceased paying the mortgage payments, causing her to default on the loan.

        c.     In or about May 2014, Reynolds mailed and caused to be mailed a fraudulent Money Order, purportedly issued or processed by the IRS and in the amount of $432,000, to Financial Institution One / Subsidiary One as a payoff of the Elizabeth Residence mortgage. Reynolds signed the fraudulent Money Order and used her own social security number as the purported account number. A redacted image of this fraudulent Money Order is provided below:

**MONEY ORDER**

Date: _May 15, 2014_                   Tracking No.: _RE 858 710 544 US_

Pay to the order of: ████ _Mortgage Services_       for $ _432,000.00_

Pay: _Four hundred thirty two thousand and 00/100_      **DOLLARS**

Memo: _For settlement of account number:_ ████_2876_

            By: _Melissa Shawn Reynolds_, executrix.
                      Authorized Signature

_MELISSA SHAWN   REYNOLDS, Estate._
████ _Union;_
_New Jersey; United States of America; [07083]_

Processor:   IRS Technical Support Division
        c/o The Treasury I CU Contract Trust Department of the IRS
        Department of the Treasury
        1500 Pennsylvania Avenue, NW
        Washington, D.C. 20220

Account No.: ████_1851_

        d.     This Money Order is fraudulent for the following reasons:

        (1)     It is not a genuine negotiable or monetary instrument. It was not issued by the United States Government, any agency of the federal government (including the IRS), or any legitimate bank. It cannot be processed or cleared through the Federal Reserve or any bank because it is not drawn on any legitimate government and banking institution with an account containing funds. It is a complete fraud.

        (2)     It does not contain a Magnetic Ink Character Recognition ("MICR") line. A MICR line contains essential information used by the Federal Reserve and financial institutions to process certain monetary instruments, such as checks, money orders, and cashier's checks. The MICR line contains a unique font and is made with magnetic ink or toner so computers can read the information. Legitimate Treasury checks, U.S. Postal Money orders, bank/cashier's checks, and checks contain MICR lines corresponding to legitimate institutions and accounts.

(3)    The purported sub-agency or department – "IRS Technical Support Division, c/o The Treasury UCC [Uniform Commercial Code] Trust Department of the IRS" – does not exist.

(4)    The United States Government does not issue single Money Orders exceeding approximately one thousand dollars.  Furthermore, unlike typical checks, money orders are prepaid.  Your Affiant has analyzed Reynolds' and Kings' known bank records, and they did not have $432,000, individually or collectively, in assets in any account at any time.

(5)    The Money Order falsely suggests that an account corresponding to Reynolds' social security number exists with the United States Government, as demonstrated by the endorsement on the fraudulent Money Order provided below (redacted):[2]



---

2.    Reynolds and King have made and used numerous documents espousing this fraud.  For example, on or about January 27, 2017, as part of a lawsuit filed in the District Court for the District of New Jersey, Reynolds and King publicaly filed an exhibit titled, "Declaration of Lawful Occupancy and Order to Validate / Prove the Existence of a Debt."  In their exhibit, Reynolds and King asserted that they are a "United States public trust" known as "The Estate."  Furthermore, in this exhibit, they jointly represented "we are aware that the funds used to acquire the property herein [the Elizabeth Residence] . . . are funds that originated from the U.S. Trust account of **This Estate** [sic] . . . ."

- 4 -

e.    The Money Order also included a corresponding "Money Order Receipt." A redacted image of this fraudulent receipt is provided below:



f.    On or about May 15, 2014, Reynolds mailed a letter to the Chief Financial Officer of Financial Institution One. In this letter, she demanded that Financial Institution One accept the Money Order and discharge her mortgage on the Elizabeth Residence. A similar letter was used by King (see Paragraph 10b below).

g.    After Subsidiary One received the fraudulent Money Order and corresponding receipt, the Money Order was sent to a bank for deposit. Although the bank immediately rejected the fraudulent Money Order, Subsidiary One erroneously credited it as a payoff of the mortgage on the Elizabeth Residence.

h.    As a result of her scheme, Reynolds fraudulently obtained the discharge of the mortgage on the Elizabeth Residence. Because Reynolds tricked Financial Institution One into discharging the mortgage, in or about October 2014, Financial Institution One sent Reynolds a refund of approximately $9,789 (the difference between the face value of the Money Order and the total amount owed on the mortgage). Financial Institution One also sent Reynolds a letter, advising her to discontinue paying her mortgage.

- 5 -

i.        Thereafter, Subsidiary One determined that the discharge of the mortgage on the Elizabeth Residence had been fraudulently obtained and instituted a lawsuit in the Superior Court of New Jersey, Union County, Chancery Division – General Equity Part, to reinstate the mortgage (the "Union County Litigation"). The lawsuit was assigned to a New Jersey Superior Court Judge (the "State Judge").

j.        In or about early January 2017, before a scheduled court appearance, Reynolds called a representative ("Representative") of Subsidiary One.[3]  During this phone call, Reynolds stated the following, in substance and in part:

> My husband [King] and I, he's here with me actually as well, we're confused with the issue . . . . we're confused because we know we paid our loan, [we] satisfied the loan with [Financial Institution One], we have a letter from you guys stating that we satisfied the loan. . . . we know that, but I have to be able to go bring that document into court . . . .

During this call, Reynolds requested the Representative provide her with a certified letter or affidavit, stating that the mortgage had been paid off. Reynolds advised the Representative that she needed this letter or affidavit for the Union County Litigation. The Representative did not provide Reynolds with such a letter or affidavit.

k.        Thereafter, Reynolds fabricated and caused to be fabricated a fictitious letter, purportedly issued by Subsidiary One. This letter contained the forged signature of the Representative[4] and falsely represented that the loan on the Elizabeth Residence had been paid in full. On or about March 13, 2017, Reynolds submitted this fraudulent letter to the District Court in the District of New Jersey (See Paragraph 4m below concerning this federal lawsuit).

l.        On or about January 13, 2017, Reynolds completed and mailed to the IRS a Form 1096, Annual Summary and Transmittal of U.S.

---

3.        Reynolds and King surreptitiously recorded this phone conversation to use during the Union County Litigation. Subsidiary One obtained this recording during that litigation.

4.        As part of the Union County Litigation, the Representative signed under penalty of perjury a certification, asserting that he had reviewed this letter and that he had neither authored nor signed it. Furthermore, the Representative was interviewed by federal agents, and the Representative again confirmed that letter was wholly fictitious.

Information Returns (2016), together with a Form 1099-A, Acquisition or Abandonment of Secured Property (2016).[5]  On the Form 1099-A, Reynolds falsely represented that (1) she had given a $450,000 loan to the State Judge as "credit used on court judgment;" (2) the State Judge was personally liable for this loan; and (3) the Union County Litigation docket number was the account number for the purported loan.

m.    On or about January 27, 2017, Reynolds and King filed a lawsuit in federal court in the District of New Jersey.  In their lawsuit, they jointly sought to remove the Union County Litigation from state court into federal court, alleging, among other things, that Subsidiary One had violated federal law by seeking to reinstate the Elizabeth Residence mortgage.  On or about January 27, 2017, as part of their federal lawsuit, Reynolds and King publicaly filed a copy of the sham Money Order receipt, as described in Paragraph 4e above, as "evidence" that they had paid the mortgage on the Elizabeth Residence (Docket No.: 17-605, Filed 1/27/17, Document 1-2, at p. 65).  In this federal lawsuit, Reynolds and King demanded approximately $90,000,000 in damages from Subsidiary One.  The federal court dismissed their lawsuit and remanded it back to state court.

n.    On or about November 14, 2017, the State Judge reinstated the mortgage and ordered Reynolds and King to pay $417,276 (plus post-judgment interest).[6]  In its publicaly filed "Statement of Reasons," the Court found "Reynolds' testimony to be incredible and ordered [her] to pay counsel fees [consistent with New Jersey's rule authorizing the imposition of the payment of attorney fees where the court finds a party submitted affidavits in bad faith or for the purpose of delay]."  The Court also found that Reynolds had committed fraud in her effort to discharge the mortgage, stating:

> [Reynolds and King] at all times contend that the money order they sent to satisfy their mortgage was valid. . . . The only response [Reynolds and King] raise as to the fact that the money was not backed up by funds is Ms. Reynolds' statement that the money order was valid.  When asked by the court [concerning] the source of the funds to pay the

5.    A Form 1099-A is used when a lender requires a loan to be secured by the purchased property.  If the lender subsequently cancels the loan, the borrower may be required to include the amount of the canceled debt in his or her gross income.  On the Form 1099-A, the lender reports the amount of the debt owed (principal only) and the fair market value of the secured property as of the date of the acquisition or abandonment of the property.  The debtor then uses the amount realized to determine a gain or loss on the disposition of the property.

6.    The State Judge was unaware of the bogus IRS filing described in Paragraph 4l above at the time she issued her order.

$417,276.00 to [Subsidiary One], Ms. Reynolds stated that it
came from 'one of' her bank accounts and she could not
recall which account. The court found her testimony
incredible. . . . The court finds that [Reynolds and King]
remitted a fraudulent money order to [Financial Institution One] in
an attempt to discharge the mortgage.

5.    Financial Institution Two and HUD (Newark, New Jersey)

a.      Financial Institution Two, headquartered in Minnesota, was
a "financial institution" within the meaning of Title 18, United States Code,
Sections 20 and 27. A mortgage service company was a subsidiary of Financial
Institution Two ("Subsidiary Two").

b.      In or about February 2009, Reynolds obtained a mortgage
from a financial institution, in the approximate amount of $314,204, for the
purchase of a residential home in Newark, New Jersey (the "Newark
Residence"). This loan was secured by a mortgage on the Newark Residence.
In exchange for this loan, Reynolds, as sole borrower, agreed to repay the
loan's principal sum plus interest within thirty years. In addition, this
mortgage was federally insured by the Federal Housing Administration ("FHA"),
U.S. Department of Housing and Urban Development ("HUD"), an executive
agency of the federal government. FHA mortgage insurance provides lenders
with protection against losses in the event a homeowner defaults on his or her
mortgage loan. With FHA loans, lenders bear less risk and are thus more
willing to provide home loans for individuals whom ordinarily would not qualify
for such loans.

c.      Thereafter, Financial Institution Two acquired the mortgage,
and Subsidiary Two serviced it. In or about early 2014, Reynolds ceased
paying the mortgage payments, causing her to default on the loan.

d.      In or about March 2014, a company acting on behalf of HUD
("Collection Company One") and in response to Reynolds' request advised her
that she owed approximately $92,329 to HUD as a partial payoff on the Newark
Residence mortgage.

e.      In or about July 2014, Reynolds mailed a fraudulent Money
Order and receipt in the amount of $92,329.89 to Collection Company One as
an attempted payoff to HUD. Reynolds signed this Money Order, and the
Money Order and receipt are substantially similar to the fraudulent Money
Order and receipt set forth in Paragraphs 4c and 4e above. The Money Order is
fraudulent for the same reasons set forth in Paragraph 4d above. On or about
January 13, 2017, Reynolds mailed the IRS a Form 1099-A, falsely
representing that she had given a $92,330 loan to the HUD as "credit used on
mortgage account."

- 8 -

      f.      On or about July 29, 2014, Reynolds mailed a fraudulent Money Order, in the amount of $252,000, to Financial Institution Two as a purported payoff of the mortgage on the Newark Residence.  The Money Order also included a receipt.  A redacted image of the receipt is provided below:



As part of this investigation, federal agents obtained this original receipt and had it forensically analyzed at the Department of Treasury's Forensic and Digital Science Laboratory.  This analysis determined that the print on this receipt corresponds to the right thumb print of Reynolds on file with law enforcement.

      g.      In or about late 2015, Financial Institution Two instituted foreclosure proceedings in Superior Court of New Jersey, Essex County, seeking to, among other things, take physical possession of the Newark Residence (later amended in late 2016 seeking the same relief)(the "Essex County Foreclosure Proceeding").

      h.      Beginning in or about May 2016, in an attempt to fraudulently deceive and trick Financial Institution Two into discharging the mortgage on the Newark Residence, Reynolds mailed Subsidiary Two additional fraudulent payments, as described below.

i.      On or about June 17, 2016, Reynolds mailed a fraudulent Money Order and receipt to Subsidiary Two as a payoff of the Newark Residence mortgage.  This fraudulent Money Order was not accepted as payment toward the mortgage.  A redacted image of this fraudulent Money Order is provided below:



j.      In response to this fraudulent Money Order and receipt, Subsidiary Two sent a letter to Reynolds, dated June 22, 2016.  This letter stated the following, in substance and in part:

> Dear Mortgagor [Reynolds]:
>
> [Subsidiary Two] is in receipt of correspondence regarding the [mortgage on the Newark Residence] for which you are the borrower.  The package received contained the following:
>
> Money Order Receipt
> Money Order from the Office of the General Executrix
>
> It is the Bank's opinion that the request does not accord with the loan agreement or established legal and regulatory parameters for the repayment and collection of mortgage debt.  The Bank will continue to service your loan . . . .
>
> [Financial Institution Two] wishes to warn you that certain unethical persons have developed and published schemes that promise mortgagors valid and legal processes for extinguishing their debts or proving their debts invalid.  If you think that you have been misled by such a person, then

you may wish to report your situation to law enforcement authorities.

   k.  In or about February 2017, Reynolds and King sought to remove the Essex County Foreclosure Proceeding from state court into federal court in the District of New Jersey.  As part of their federal lawsuit, Reynolds and King filed certain documents with the Court that contained materially false statements and representations and covered up and concealed certain material facts, including the following:

     (1)  "Statement of Account," dated July 22, 2016.  In this document, Reynolds falsely represented that she had paid approximately $504,000 to Financial Institution Two in 2014 and thus owed the entity $0. (ECF, 2:17-cv-00657, p. 155).

     (2)  "Affidavit of Truth," dated July 22, 2016.  In this document, Reynolds falsely claimed that she had "paid over $100,000 in federal reserve notes from February of 2009 until March 2014, in satisfaction of the [mortgage on the Newark Residence]."(ECF, 2:17-cv-00657, p. 156-157).

     (3)  "Affidavit and Notice," dated November 20, 2016.  In this document, Reynolds and King falsely asserted the following: "THERE IS NO DEBT OWED IN THE MATTER . . . [to Financial Institution Two] . . . . I do not owe for the alleged debt, debt has been paid in by bond. . . ." ].(ECF, 2:17-cv-00657, p. 170).

The federal court ultimately dismissed Reynolds' and King's removal action.

l.      In or about early March 2017, Reynolds sent another fraudulent payment to Subsidiary Two, namely, a bogus Cashiers [sic] Check purportedly issued or guaranteed by the Department of Treasury. A redacted image of this Cashier's Check is provided below:



m.      This Cashier's Check is fraudulent for the following reasons, among others:

(1)     It is not a genuine negotiable or monetary instrument. It was not issued by the United States Government, any agency of the federal government (including the Department of Treasury), or any legitimate bank. It cannot be processed or cleared through the Federal Reserve or any bank because it is not drawn on any legitimate government and banking institution with an account containing funds. It is a complete fraud.

(2)     The MICR line neither contains a legitimate bank routing number nor a legitimate account number. The purported account number in the MICR line is actually Reynolds' social security number (redacted in part).

(3)     The Cashier's Check creates the false illusion that an account corresponding to Reynolds' social security number exists with the United States Government—namely, the "United States Citizen Trust Melissa Shawn Reynolds[,] Except Priority Pre-Paid Account No. [Reynolds' social security number]. No such account exists.

n.     In response to the fraudulent Cashier's Check described above, Subsidiary Two sent another letter to Reynolds, dated March 13, 2017. This letter stated the following, in substance and in part:

> [Subsidiary Two] has received your most recent correspondence. We understand you believe or have asserted that you have no further obligation related to loan number [account corresponding to the Newark Residence], which [Subsidiary Two] has responsibility for servicing. [Financial Institution Two] disagrees with your conclusion about your obligation and will continue to act as servicer for [the mortgage on the Newark Residence] . . . .

o.     In or about mid-March 2017, Reynolds sent a third fraudulent payment to Subsidiary Two, namely, a Cashier's Check in the amount of $350,000. This fraudulent Cashier's Check was not accepted as payment toward the mortgage.

p.     In or about May 2017, Reynolds sent a fourth fraudulent payment to Subsidiary Two, namely, a Cashier's Check in the amount of $350,000. This fraudulent Cashier's Check was not accepted as payment toward the mortgage.

### 6.     Financial Institution Three and HUD (Hillside, New Jersey)

a.     Financial Institution Three, headquartered in New York, was a "financial institution" within the meaning of Title 18, United States Code, Sections 20 and 27.

b.     Reynolds and James were previously married. They divorced in 2008. As part of their divorce, James obtained sole ownership of a residence in Hillside, New Jersey (the "Hillside Residence"). The mortgage is held by Financial Institution Three and was FHA insured.

c.     Beginning in or about May 2016, Reynolds and James mailed fraudulent payments to Financial Institution Three, HUD, and a collection company working on behalf of HUD ("Collection Company Two") as attempted payments toward or payoffs of the Hillside Residence mortgage. For example, on or about May 27, 2016, James mailed and caused to be mailed a fraudulent Money Order in the amount of $305,000 to Financial Institution Three. A redacted image of this fraudulent Money Order is provided below:

d.    James and Reynolds mailed and caused to be mailed other fraudulent payments to Financial Institution Three, HUD, or Collection Company Two, as attempted payments or payoffs of the mortgage on the Hillside Residence:

| Date | Payee | Amount | General Description |
|---|---|---|---|
| June 8, 2016 | Collection Company Two | $92,393 | Fraudulent Money Order, bearing James' signature social security number and purportedly issued or processed by the IRS (with fraudulent receipt). |
| June 8, 2016 | HUD | $92,393 | Fraudulent Money Order, bearing James' signature social security number and purportedly issued or processed by the IRS (with fraudulent receipt). |
| June 20, 2016 | Financial Institution Three | $305,000 | Fraudulent Money Order, bearing James' signature social security number and purportedly issued or processed by the IRS (with fraudulent receipt). |

- 14 -

| Date | Payee | Amount | General Description |
|------|-------|--------|---------------------|
| June 21, 2016 | HUD | $92,393 | Fraudulent Money Order, bearing James' signature social security number and purportedly issued or processed by the IRS (with fraudulent receipt). |
| June 19, 2017 | Financial Institution Three | $322,000 | Fraudulent Cashier's Check, bearing Reynolds' signature and social security number, that falsely claimed to be issued by the Department of Treasury. |

e.     The above Money Orders and Cashier's Check are fraudulent for the same reasons set forth in Paragraphs 4d and 5m above.

f.     James also completed and signed two Forms 1096 and mailed them to the IRS, together with Forms 1099-A. Federal agents have obtained these original documents. Although each Form 1099-A contains information pertaining to James (including his social security number), the information appears to have been written by Reynolds. In summary, on these Forms 1099-A, James and Reynolds made the following false statements to the IRS: (1) James had given a $92,393 loan to HUD as "credit used on mortgage account"; (2) James had given a $92,393 loan to Collection Company Two as "credit used on mortgage account"; and (3) James had given a $299,148 loan to Financial Institution Three as "credit used on mortgage account."

g.     In or about October 2016, Financial Institution Three instituted a lawsuit in New Jersey Superior Court, Union County, Chancery Division to foreclose on the Hillside Residence. Financial Institution Three alleged that James defaulted on the mortgage. Thereafter, on or about January 27, 2017, Reynolds and James filed a lawsuit in federal court in the District of New Jersey. In their lawsuit, they jointly sought to remove this foreclosure proceeding from state court into federal court, alleging, among other things, that Financial Institution Three was a "debt collector . . . attempting to collect a debt that does not exist." On or about June 19, 2017, Reynolds and James failed to appear in federal court, as ordered, and the Court dismissed their lawsuit and remanded it back to state court.

h.     As a further part of the scheme to reduce and eliminate legal debt and obligations, James submitted false and fraudulent documents to the Department of Treasury in an effort to have the federal government pay for his lawful debts and credit obligations from a non-existent account. For example:

(1)     In or around June 2016, James received a cable bill from his cable/internet service provider at the Hillside Residence in the amount of approximately $184. On the face of the bill, James stamped and wrote: "ACCEPTED FOR VALUE WITHOUT RECOURSE . . . . PAY TO THE U.S. DEPARTMENT OF TREASURY AND CHARGE THE SAME TO HENRY JAMES [his social security number]. James then signed it. On the bottom of the bill, James wrote: "Pay to the order of the United States Treasury in the amount of: [$360]." James also completed a Form 1040-V, Payment Voucher, falsely claiming he was paying the United States $360 for the cable bill. On or about June 22, 2016, via United States mail, James sent the cable bill (as described above) and the Form 1040-V to the Department of Treasury.

(2)     In or around June 2016, James received a water bill from his water utility company at the Hillside Residence in the amount of approximately $59.60. On the face of the bill, James stamped and wrote: "ACCEPTED FOR VALUE WITHOUT RECOURSE . . . . PAY TO THE U.S. DEPARTMENT OF TREASURY AND CHARGE THE SAME TO HENRY JAMES [his social security number]. James then signed it. On the top of the bill, James wrote: "Pay to the order of the United States Treasury in the amount of: [$140]." James also completed a Form 1040-V, Payment Voucher, falsely claiming he was paying the United States $140 for his water bill. On or about June 27, 2016, via United States mail, James sent the water bill (as described above) and the Form 1040-V to the Department of Treasury.

(3)     In or around June 2016, James received an electric bill from his electric utility company at the Hillside Residence in the amount of approximately $283. On the face of the bill, James stamped and wrote: "ACCEPTED FOR VALUE WITHOUT RECOURSE . . . . PAY TO THE U.S. DEPARTMENT OF TREASURY AND CHARGE THE SAME TO HENRY JAMES [his social security number]. James then signed it. On the bottom of the bill, James wrote: "Pay to the order of the United States Treasury in the amount of: [$300]." James also completed a Form 1040-V, Payment Voucher, falsely claiming he was paying the United States $300 for his electric bill. On or about June 22, 2016, via United States mail, James sent the electric bill (as described above) and the Form 1040-V to the Department of Treasury.

7.     Financial Institution Three (West Orange, New Jersey)

a.     In or about 2007, Martin obtained a mortgage from a financial institution, in the approximate amount of $297,000, for the purchase of a residential home in West Orange, New Jersey (the "West Orange Residence"). This loan was secured by a mortgage on the West Orange Residence. In exchange for this loan, Martin, as sole borrower, agreed to repay the loan's principal sum plus interest within thirty years. Thereafter, this mortgage was acquired by Financial Institution Three. In or about July 2014,

- 16 -

Martin ceased paying the mortgage payments, causing him to default on the loan.

b.     Beginning in or about July 2014, Reynolds and Martin mailed fraudulent payments to Financial Institution Three as attempted payoffs of the West Orange Residence mortgage. On or about July 29, 2014, Martin mailed Financial Institution Three a fraudulent Money Order in the amount of $245,330. A redacted image of this fraudulent Money Order is provided below:



c.     Martin and Reynolds mailed and caused to be mailed other fraudulent payments to Financial Institution Three as attempted payments or payoffs of the mortgage for the West Orange Residence, as follows:

| Date | Amount | General Description / Remarks |
|------|--------|-------------------------------|
| June 20, 2016 | $230,000 | Fraudulent Money Order, bearing Martin's signature social security number and purportedly issued or processed by the IRS (with fraudulent receipt). |
| February 2, 2017 | $225,000 | Fraudulent Cashier's Check, bearing Reynolds' signature and social security number, that falsely claimed to be issued by the Department of Treasury. |

d.     The above Money Orders and Cashier's Check are fraudulent for the same reasons set forth in Paragraphs 4d and 5m above.

e.     As a further part of the scheme to reduce and eliminate legal debts and obligations, Martin submitted false and fraudulent documents to the Department of Treasury in an effort to have the federal government pay for his lawful debts and credit obligations from a non-existent account. For example:

(1)    In or around May 2016, Martin received an electric bill from his electric utility company at the West Orange Residence in the amount of approximately $1,901 (which amount included a balance from a prior bill). On the face of the bill, Martin stamped and wrote: "ACCEPTED FOR VALUE WITHOUT RECOURSE [in red ink] . . . . PAY TO THE U.S. DEPARTMENT OF TREASURY AND CHARGE THE SAME TO ARTHUR MARTIN [his social security number]. Martin then signed it. On the bottom of the bill, Martin wrote: "Pay to the order of the United States Treasury in the amount of: [$1,901.79]." Martin also completed a Form 1040-V, Payment Voucher, falsely claiming he was paying the United States $1,901.79 for his electric bill. On or about June 17, 2016, via United States mail, Martin sent the electric bill (as described above) and the Form 1040-V to the Department of Treasury.

(2)    Martin also completed and signed a Form 1096 and sent it to the IRS, together with a Form 1099-A. Federal agents have obtained these original documents. Although the Form 1099-A contains information pertaining to Martin (including his social security number), the information appears to have been written by Reynolds. In summary, on the Form 1099-A, Martin and Reynolds made the following false statements to the IRS: (1) Martin had given a $225,000 loan to Financial Institution Three as "credit used on mortgage account"; and (2) Martin had given a $1,901.79 loan to his electric utility company as "credit used on utility account."

8.    Financial Institution Four (Bowie, Maryland)

a.    Financial Institution Four, headquartered in California, was a "financial institution" within the meaning of Title 18, United States Code, Sections 20 and 27.

b.    According to records from Financial Institution Four, it owns and services a mortgage on a residential property in Bowie, Maryland (the "Maryland Residence"). In or about June 2016, Financial Institution Four sent a "notice of intent to foreclose" to the residents of the Maryland Residence.

c.    On or about June 12, 2016, Co-Conspirator One sent a fraudulent Money Order in the amount of $220,000 to Financial Institution Four. A redacted image of this fraudulent Money Order is provided below:



d.    The above Money Order is fraudulent for the same reasons set forth in Paragraph 4d above.

e.    On or about February 2, 2017, Co-Conspirator One mailed a fraudulent Cashier's Check in the amount of $226,000 to Financial institution Four as an attempted payoff of the Maryland Residence mortgage. This fraudulent Cashier's Check contains Reynolds' name and her social security number; however, Reynolds' last name on the signature is misspelled. A redacted image of this fraudulent Cashier's Check is provided below:

    f.  The above Cashier's Check is fraudulent for the same reasons set forth in Paragraph 5m above.

    g.  An analysis of Reynolds' e-mail transaction records reveals that Reynolds communicated with one of the residents of the Maryland Residence on several occasions between 2016 and 2017.

  9.  <u>Student Loan Fraud</u>

    a.  Beginning in or about 2009, Reynolds applied for financial aid through the United States Department of Education ("ED"), an executive agency of the federal government, to pay for student loans.  In total, Reynolds borrowed and received over $52,000 in student loans (subsidized and unsubsidized) and was obligated to repay this loan to the United States.  As of July 2014, Reynolds owed a substantial amount of money to the United States on these student loans.

    b.  Reynolds mailed fraudulent Money Orders and Cashier's Checks, payable to the ED, to a company ("Collection Company Three") that services student loans payments on behalf of the ED, as follows:

| Date | Amount | General Description / Remarks |
|---|---|---|
| July 29, 2014 | $60,000 | Fraudulent Money Order, bearing Reynolds' signature and social security number and purportedly issued or processed by the IRS (with fraudulent receipt). |
| January 21, 2017 | $53,000 | Fraudulent Cashier's Check, bearing Reynolds' signature and social security number, that falsely claimed to be issued by the Department of Treasury. |
| February 2, 2017 | $14,000 | Fraudulent Cashier's Check, bearing Reynolds' signature and social security number, that falsely claimed to be issued by the Department of Treasury. |
| February 23, 2017 | $67,000 | Fraudulent Cashier's Check, bearing Reynolds' signature and social security number, that falsely claimed to be issued by the Department of Treasury. |
| March 20, 2017 | $67,000 | Fraudulent Cashier's Check, bearing Reynolds' signature and social security number, that falsely claimed to be issued by the Department of Treasury.<br><br>This check was payable to the "US DEPARTMENT OF EDICATION." [sic]. |

c.     The above Money Order and Cashier's Check are fraudulent for the same reasons set forth in Paragraphs 4d and 5m above.

d.     In a letter dated March 13, 2017, Collection Company Three mailed a letter to Reynolds. This letter stated the following, in substance and in part: "ACTION NEEDED: Your previous payment could not be processed. Please submit a new payment as soon as possible . . . . Your recent payment of $67,000 could not be processed because your financial institution was unable to process the transaction . . . ." As set forth above, Reynolds then mailed Collection Company Three another fraudulent Cashier's Check in the amount of $67,000.

e.     On or about January 13, 2017, Reynolds completed and mailed to the IRS a Form 1096, Annual Summary and Transmittal of U.S. Information Returns (2016). As part of this transmittal form, Reynolds completed and included a Form 1099-A. On this form, Reynolds falsely represented that she had given a $65,000 loan to Collection Company Three as "credit used on student loan account." On this form, Reynolds represented that Collection Company Three was personally liable for this loan.   Reynolds used her student loan account number as the account number for the purported loan.

10.     Fraud Committed by King

a.     In or about August 2014, King mailed and caused to be mailed to the Department of Treasury several fraudulent and fictitious documents, including fraudulent money orders, as part of his scheme to eliminate his lawful debts.

b.     For example, in or about August 2014, King mailed the following letter to the Department of Treasury in an effort to write off his then existing delinquent debts (redacted):

GERMAINE HOWARD   KING, Estate.
Office of The Executor.

███████████████
Union.
Nation New Jersey.
united States of America.
Near. [07083]

Done by the Light of the Day - of one August two zero one four.

═══════════════════════

RE 919 961 384 US

═══════════════════════

To:       Attention: Rosie Rios, Treasurer
          U.S. Department of The Treasury
          1500 Pennsylvania Avenue, NW
          Washington, D.C. 20220
          U.S.A.

From:   Office of The Executor – GERMAINE HOWARD   KING, Estate.

Re:      Acceptance of Oath of Office and Appointment of Trustee.

Dear Rosie;

Be advised that, as occupant to the office of Executrix for the GERMAINE HOWARD   KING, Estate. I,
Germaine-Howard: King, the Living man, am hereby explicitly accepting your sworn Oath of Office, wherein
you have sworn to Honor and Defend the Constitution of the United States, which secures all rights granted to
me by my Creator. Be also advised and let the record show that as an agent of the United States, you are further
hereby officially appointed as Trustee to said Estate.

Take notice that as appointed Trustee, you are herein and hereby warranted to assist this Office in privately
processing the attached Instruments and settling all of the accounts referenced on the instruments, for and on
behalf of this Estate.

You are furthermore warranted to effectively notify the issuers of all enclosed debt instruments that the
delinquent accounts they represent are now being settled exclusively by your Office.

Finally, let it be known that this notice and the appointment it granted are but my Peaceful effort to assist in the
reduction of the United States deficit.

Thanks in advance for your kind assistance,

                                    govern yourself accordingly.


                              by: *Germaine Howard King* , executrix.
                              GERMAINE HOWARD   KING, Estate.
                              Office of The Executor.
                              ███████████████
                              Union.
                              Nation New Jersey.
                              united States of America.
                              Near. [07083]

- 22 -

c. In furtherance of his "debt elimination" scheme, King mailed the following bogus Money Orders to the Department of Treasury (redacted):

(1) Credit Card Account:

**MONEY ORDER**

**Date:** *July 29, 2014* **Tracking No.:** *RE 919 961 384 US - 4*

**Pay to the order of:** [redacted] *& CO* **for $** *2,225.77*

**Pay:** *Two thousand two hundred twentyfive and 77/100* **DOLLARS**

**Memo:** *For settlement of account number:* [redacted] *0893*

**By:** *Germaine Howard King*, **executor.**
Authorized Signature

*GERMAINE HOWARD KING, Estate.*
[redacted] *Union;*
*New Jersey; united States of America; [07083]*

**Account No.:** [redacted] *0408*

Processor: IRS Technical Support Division
c/o The Treasury UCC Contract Trust Department of the IRS
Department of the Treasury
1500 Pennsylvania Avenue, NW
Washington, D.C. 20220

(2) Credit Union:

**MONEY ORDER**

**Date:** *July 29, 2014* **Tracking No.:** *RE 919 961 384 US - 3*

**Pay to the order of:** [redacted] *Credit Union of New York City* **for $** *22,260.00*

**Pay:** *Twenty-two thousand Two hundred sixty and 00/100* **DOLLARS**

**Memo:** *For settlement of account number:* [redacted] *39-21*

**By:** *Germaine Howard King*, **executor.**
Authorized Signature

*GERMAINE HOWARD KING, Estate.*
[redacted] *Union;*
*New Jersey; united States of America; [07083]*

**Account No.:** [redacted] *0408*

Processor: IRS Technical Support Division
c/o The Treasury UCC Contract Trust Department of the IRS
Department of the Treasury
1500 Pennsylvania Avenue, NW
Washington, D.C. 20220

(3) Home improvement retailer:

**MONEY ORDER**

**Date:** *July 29, 2014* **Tracking No.:** *RE 919 961 384 US - 2*

**Pay to the order of:** [redacted] *Inc.* **for $** *1,700.00*

**Pay:** *One thousand seven hundred and 00/100* **DOLLARS**

**Memo:** *For settlement of account number:* [redacted] *7770*

**By:** *Germaine Howard King*, **executor.**
Authorized Signature

*GERMAINE HOWARD KING, Estate.*
[redacted] *Union;*
*New Jersey; United States of America; [07083]*

**Account No.:** [redacted] *0408*

Processor: IRS Technical Support Division
c/o The Treasury UCC Contract Trust Department of the IRS
Department of the Treasury
1500 Pennsylvania Avenue, NW
Washington, D.C. 20220

d.    The above Money Orders are fraudulent for the same reasons set forth in Paragraph 4d above.

11.    Luxury Vehicle Fraud

a.    A company located in Georgia provided financing for the purchase of luxury cars ("Leasing Company One").  A company located in Texas provided financing for the purchase of luxury cars ("Leasing Company Two").

Car One

b.    In or about March 2013, Dxrams leased a 2012 Bentley (the "Car One") from an auto dealer in New Jersey, and Leasing Company One was assigned the rights under the lease.  Thereafter, Dxrams requested a payoff amount, seeking to convert the lease on Car One into a purchase.  As of in or about February 2017, the total payoff amount for Car One was approximately $93,235.

c.    On or about February 27, 2017, Reynolds mailed and caused to be mailed fraudulent Cashier's Check in the amount of $101,000 to Leasing Company One as a payoff of the note on Car One.[7]  This fraudulent Cashier's Check contained Reynolds' name, her social security number, and her signature.  This Cashier's Check is fraudulent for the same reasons set forth in Paragraph 5m above.

d.    Although fraudulent, Leasing Company One accepted the Cashier's Check as a payoff of Car One.

e.    In or about March 28, 2017, Dxrams sold Car One to a third party for approximately $82,000.  Dxrams then issued a bank check, in the approximate amount of $25,000, to King.  On or about March 30, 2017, King deposited this check into his bank.

f.    In or about June 2017, Leasing Company One filed a lawsuit in Superior Court of New Jersey, Essex County, Law Division against Dxrams, alleging breach of contract and fraud and seeking damages.  On or about July 12, 2017, Dxrams filed a lawsuit in federal court in the District of New Jersey, seeking to remove the state court proceeding into federal court.  In his federal filing, Dxrams alleged that Leasing Company One had violated federal law by trying to collect on a debt (i.e., the note on Car Two).  As part of his federal filings, Dxams publicaly filed a copy of the fraudulent $101,000 Cashier's

---

7.    The fraudulent payoff amount was approximately $7,700 more than the actual payoff amount.

- 24 -

Check described on Paragraph 11c above. The court dismissed his removal suit.

### Car Two

g. In or about March 2015, Dxrams leased a 2015 Mercedes-Benz ("Car Two") from an auto dealer in New Jersey, and Leasing Company Two was the lender. Thereafter, Dxrams requested a payoff amount, seeking to convert the lease on Car Two into a purchase. As of in or about February 2017, the total payoff amount for Car Two was approximately $44,493.

h. On or about February 27, 2017, Reynolds mailed and caused to be mailed a fraudulent Cashier's Check in the amount of $51,000 to Mercedes-Benz Financial as a payoff of the note on Car Two. This fraudulent Cashier's Check contained Reynolds' name, her social security number, and her signature. Although fraudulent, Leasing Company Two accepted the Cashier's Check as a payoff of Car Two and released title of Car Two to Dxrams. After determining that the payment was fraudulent, on or about March 10, 2017, Leasing Company Two sent a letter to Dxrams, advising him that the $51,000 payment was "returned unpaid by the bank. This is a serious matter." In this letter, Leasing Company Two also demanded a valid certified check as a payoff of the car or that he return Car Two's title to Leasing Company Two.

i. On or about May 2, 2017, Reynolds mailed and caused to be mailed another fraudulent Cashier's Check in the amount of $53,000 to Leasing Company Two as a purported payoff Car Two. This fraudulent Cashier's Check contained Reynolds' name (but not her social security number) and her apparent signature. In July 2017, Dxrams returned title to Car Two to Leasing Company Two.

j. The above referenced Cashier's Checks are fraudulent for the same reasons set forth in Paragraph 5m above.

### Car Three

k. In or about February 2016, Dxrams leased a 2016 Mercedes-Benz ("Car Three") from an auto dealer in New Jersey, and Leasing Company Two was the lender. Thereafter, Dxrams requested a payoff amount, seeking to convert the lease on Car Three into a purchase. As of in or about February 2017, the total payoff amount for Car Three was approximately $102,983.

l. On or about June 21, 2017, Reynolds mailed and caused to be mailed a fraudulent Cashier's Check in the amount of $116,000 to Leasing Company Two as a payoff of the note on Car Three. This fraudulent Cashier's Check contained Reynolds' name and her social security number. Her signature on this Cashier's Check appears to have been signed by another

individual. This Cashier's Check is fraudulent for the same reasons set forth in Paragraph 5m above.

     12.    <u>Credit Card Fraud</u>

        a.    In an effort to fraudulently payoff and discharge debts and other financial obligations, Reynolds mailed fraudulent money orders and cashier's checks to credit card companies, lenders, and other entities, as follows:

| Date | Payee | Amount | General Description / Remarks |
|---|---|---|---|
| January 21, 2017 | Credit card company headquartered in Virginia | $6,000 | Fraudulent Cashier's Check, bearing Reynolds' signature and social security number, that falsely claimed to be issued by the Department of Treasury. |
| February 23, 2017 | Large retail store (credit card) | $5,000 | Fraudulent Cashier's Check, bearing Reynolds' signature and social security number, that falsely claimed to be issued by the Department of Treasury. |
| February 23, 2017 | Utility company | $5,000 | Fraudulent Cashier's Check, bearing Reynolds' signature and social security number, that falsely claimed to be issued by the Department of Treasury. |
| February 27, 2017 | Credit card company headquartered in Virginia | $5,000 | Fraudulent Cashier's Check, bearing Reynolds' signature and social security number, that falsely claimed to be issued by the Department of Treasury. |
| February 27, 2017 | Credit card company headquartered in Virginia | $5,000 | Fraudulent Cashier's Check, bearing Reynolds' signature and social security number, that falsely claimed to be issued by the Department of Treasury. |

| Date | Payee | Amount | General Description / Remarks |
|------|-------|--------|-------------------------------|
| March 11, 2017 | Credit card company headquartered in Virginia | $15,000 | Fraudulent Cashier's Check, bearing Reynolds' signature and social security number, that falsely claimed to be issued by the Department of Treasury. |
| March 20, 2017 | Large retail store (credit card) | $3,000 | Fraudulent Cashier's Check, bearing Reynolds' signature and social security number, that falsely claimed to be issued by the Department of Treasury. |
| May 2, 2017 | Credit card company headquartered in Virginia | $8,500 | Fraudulent Cashier's Check, bearing Reynolds' signature and social security number, that falsely claimed to be issued by the Department of Treasury. |

b.      The Cashier's Checks referred to above are fraudulent for the same reasons set forth in Paragraph 5m above.