

2018R00678/am & lsh

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Hon. William H. Walls |
| v. | : | Criminal Number: 18-379 (WHW) |
| DANIEL K. DXRAMS,<br>  a/k/a "Daniel Kusi,"<br>  a/k/a "Danny D. Dxrams,"<br>  a/k/a "Randy N. Amoateng" | : | 18 U.S.C. §§ 1341, 1349, 1519,<br>152(2), and 2 |

S U P E R S E D I N G   I N D I C T M E N T

Count One
(Conspiracy to Commit Mail Fraud)

The Grand Jury in and for the District of New Jersey, sitting at Newark,

charges as follows:

Introduction

The Defendant and Others:

1.      At various times relevant to this Superseding Indictment:

a.      Defendant Daniel K. Dxrams, a/k/a "Daniel Kusi," a/k/a

"Danny D. Dxrams," a/k/a "Randy N. Amoateng" ("Dxrams"), was a resident of

Maplewood, New Jersey.  Defendant Dxrams was employed by the State of New

Jersey.  In addition, defendant Dxrams was the sole proprietor and owner of

Dxrams Auction, a purported online auction business.  Defendant Dxrams also

operated a car rental service.

b.      Co-Conspirator One, an individual not named as a defendant

herein, was a resident of Elizabeth, New Jersey.





RECEIVED

SEP 2 8 2018

AT 8:30_____M
WILLIAM T WALSH. CLERK

c.      Co-Conspirator Two, an individual not named as a defendant herein, was a resident of Elizabeth, New Jersey.

The Victim Auto Leasing Companies

d.      A company provided financing for the purchase of luxury cars ("Company One").

e.      A company provided financing for the purchase of luxury cars ("Company Two").

f.      A company provided financing for the purchase of luxury cars ("Company Three").

The Luxury Cars

g.      In or about March 2013, defendant Dxrams leased a 2012 Bentley (the "Bentley"), and Company One was assigned the rights under this lease.  The price of the Bentley was approximately $184,000.

h.      In or about March 2016, defendant Dxrams leased a 2016 Rolls Royce Coupe (the "Rolls Royce"), and Company Two provided the financing for the Rolls Royce.  The price of the Rolls Royce was approximately $339,075.

i.      In or about March 2015, defendant Dxrams leased a 2015 Mercedes-Benz ("MB-1").  The price of MB-1 was approximately $43,409.  In or about March 2015, defendant Dxrams' family member (the "Family Member") leased a 2015 Mercedes-Benz ("MB-2").  The price of MB-2 was approximately $41,850.  In or about February 2016, defendant Dxrams leased a 2016

Mercedes-Benz ("MB-3").  The price of MB-3 was approximately $104,736.

Company Three provided the financing for MB-1, MB-2, and MB-3.

The Conspiracy

2.      From in or about February 2017 through in or about July 2017, in

Union and Essex Counties, in the District of New Jersey and elsewhere,

defendant

DANIEL K. DXRAMS,
a/k/a "Daniel Kusi,"
a/k/a "Danny D. Dxrams,"
a/k/a "Randy N. Amoateng,"

knowingly and intentionally conspired and agreed with Co-Conspirator One,

Co-Conspirator Two, and others to devise and intend to devise a scheme and

artifice to defraud the Victim Auto Leasing Companies, as described in Paragraph

1d through 1f of this Count, and to obtain money and property by means of

materially false and fraudulent pretenses, representations, and promises, and for

the purpose of executing the scheme and artifice to defraud, caused to be placed

in a United States post office or other authorized depository for mail matter,

items to be delivered by the United States Postal Service according to the

directions thereon, and caused to be deposited items to be sent and delivered by

private and commercial interstate carriers, as set forth below, contrary to Title

18, United States Code, Section 1341.

## Object of the Conspiracy

3.      The object of the conspiracy was to unlawfully obtain money and property by fraudulently discharging the lawful debts of defendant Dxrams and the Family Member.

## Manner and Means of the Conspiracy

4.      It was part of the conspiracy that defendant Dxrams provided information and documents, including payoff information related to the luxury cars and a mortgage, to Co-Conspirator One and Co-Conspirator Two.

5.      It was further part of the conspiracy that defendant Dxrams, Co-Conspirator One, and Co-Conspirator Two made and caused to be made fraudulent cashier's checks, payable to the Victim Auto Leasing Companies, for the purpose of fraudulently discharging defendant Dxrams' and the Family Member's lawful financial obligations related to the luxury cars.

6.      It was further part of the conspiracy that Co-Conspirator One, Co-Conspirator Two, and defendant Dxrams mailed and caused to be mailed the fraudulent cashier's checks to the Victim Auto Leasing Companies.

7.      For example:

a.      In or about February 2017, defendant Dxrams gave payoff information and quotes for the leases for MB-1, MB-3, the Bentley, and the mortgage on the Family Member's residence in Maplewood, New Jersey, to Co-Conspirator One and Co-Conspirator Two.

- 4 -

b.     On or about February 27, 2017, Co-Conspirator One signed a fraudulent cashier's check, payable to Company Three and in the approximate amount of $51,000, as a payment of the lease for defendant Dxrams' MB-1. Thereafter, this fraudulent cashier's check was mailed to Company Three.

c.     On or about February 27, 2017, Co-Conspirator One signed a fraudulent cashier's check, payable to Company One and in the approximate amount of $101,000, as a payment of the lease for defendant Dxrams' Bentley. Thereafter, this fraudulent cashier's check was mailed to Company One. Although fraudulent, Company One accepted this cashier's check as a payoff of the Bentley and issued title to the Bentley to defendant Dxrams.  Company One mailed this title to defendant Dxrams via Federal Express.

d.     On or about February 27, 2017, Co-Conspirator One signed a fraudulent cashier's check, payable to Company Two and in the approximate amount of $300,000, as payment of the lease for defendant Dxrams' Rolls Royce. Thereafter, this fraudulent cashier's check was mailed to Company Two.

e.     On or about February 27, 2017, Co-Conspirator One signed another fraudulent cashier's check, payable to Company Two and in the approximate amount of $300,000, as a second payment of the lease for defendant Dxrams' Rolls Royce.  Thereafter, on or before April 3, 2017, this fraudulent cashier's check was mailed to Company Two.

      f.     In or about March 2017, after receiving a fraudulent cashier's check in the approximate amount of $51,000, Company Three released title of the MB-1 to defendant Dxrams.

      g.     On or about March 9, 2017, a fraudulent cashier's check, payable to Company Three and in the approximate amount of $50,000, was mailed to Company Three, as payment of the lease for the Family Member's MB-2.

      h.     On or about March 10, 2017, Company Three mailed a letter to defendant Dxrams, advising him that the $51,000 payment, which payment resulted in him receiving title to MB-1, was returned unpaid by the bank.  In this letter, Company Three advised defendant Dxrams that he owed approximately $51,063, the full balance of the lease, and it was a "serious matter."

      i.     On or about March 15, 2017, Company Three mailed a letter to defendant Dxrams' residence and addressed to the Family Member, advising the Family Member that the $50,000 payment for MB-2 was returned unpaid by the bank, and the balance due on MB-2 was approximately $39,204.

      j.     On or about March 21, 2017, defendant Dxrams entered into a contract to sell the Bentley to a third party for approximately $82,000.  On this contract, defendant Dxrams, a resident of Maplewood, New Jersey, used an address in Stroudsburg, Pennsylvania, where he did not reside.

      k.     On or about March 28, 2017, defendant Dxrams deposited a check, in the approximate amount of $67,000 and drawn on the third party's

account, into defendant Dxram's Wells Fargo bank account. In addition, on or about March 28, 2017 and as part of the sale of the Bentley, the third party issued defendant Dxrams a second check, in the approximate amount of $6,000, which check defendant Dxrams signed back to the third party to pay for expenses related to the sale. Finally, on or about March 28, 2017, the third party gave defendant Dxrams approximately $9,000 in cash.

l.      On or about March 30, 2017, defendant Dxrams issued a genuine cashier's check, in the approximate amount of $25,000, to Co-Conspirator Two. On or about April 6, 2017, this genuine cashier's check was deposited into Co-Conspirator Two's bank account.

m.      On or about April 20, 2017, after receiving an e-mail from Company One concerning his Bentley account, defendant Dxrams replied via e-mail: "Hi, please make a note on the account that the car is being paid off within the next week. DX." Defendant Dxrams, who had sold the Bentley, did not make any payments to Company One for the Bentley.

n.      On or about May 2, 2017, Co-Conspirator One signed a fraudulent cashier's check, payable to Company Three and in the approximate amount of $53,000, as payment of the lease of defendant Dxrams' MB-1. Thereafter, this fraudulent cashier's check was mailed to Company Three.

o.      On or about May 2, 2017, Co-Conspirator One signed a fraudulent cashier's check, payable to Company Two and in the approximate

amount of $300,000, as payment of the lease for defendant Dxrams' Rolls Royce. Thereafter, this fraudulent cashier's check was mailed to Company Two.

p.     On or about June 21, 2017, Co-Conspirator One signed a fraudulent cashier's check, payable to Company Three and in the approximate amount of $38,000, as payment of the lease for the Family Member's MB-2. Thereafter, this fraudulent cashier's check was mailed to Company Three.

q.     On or about June 21, 2017, Co-Conspirator One signed a fraudulent cashier's check, payable to Company Three and in the approximate amount of $116,000, as payment of the lease of defendant Dxrams' MB-3. Thereafter, this fraudulent cashier's check was mailed to Company Three.

r.     In or about late July 2017, defendant Dxrams filed a lawsuit in federal court in the District of New Jersey, wherein he falsely asserted that he had paid off the Bentley in full with certified funds on or about February 27, 2017, namely, the fraudulent $101,000 cashier's check signed by Co-Conspirator One.

All in violation of Title 18, United States Code, Section 1349.

<u>Counts Two Through Ten</u>
(Mail Fraud)

1.     The allegations set forth in Paragraph 1 and Paragraphs 4 through 7 of Count One of this Superseding Indictment are realleged and incorporated as if set forth herein.

2.     On or about or about the dates set forth below, for the purpose of executing the scheme and artifice to defraud, and attempting to do so, in Union and Essex Counties, in the District of New Jersey and elsewhere, defendant

DANIEL K. DXRAMS,
a/k/a "Daniel Kusi,"
a/k/a "Danny D. Dxrams,"
a/k/a "Randy N. Amoateng,"

knowingly caused to be placed in a United States post office and other authorized depository for mail matter, and aided and abetted the same, items to be delivered by the United States Postal Service according to the directions thereon, and caused to be deposited items to be sent and delivered by private and commercial interstate carriers, as set forth below:

| Count | Approximate Date of Mailing | Payee | Description of Mail Matter |
|---|---|---|---|
| 2 | February 27, 2017 | Company One | A fraudulent cashier's check, in the approximate amount of $101,000, as a payment for defendant Dxrams' Bentley. |
| 3 | February 27, 2017 | Company Two | A fraudulent cashier's check, in the approximate amount of $300,000, as a payment for defendant Dxrams' Rolls Royce. |

| Count | Approximate Date of Mailing | Payee | Description of Mail Matter |
|---|---|---|---|
| 4 | February 27, 2017 | Company Three | A fraudulent cashier's check, in the approximate amount of $51,000, as a payment for defendant Dxrams' MB-1. |
| 5 | March 9, 2017 | Company Three | A fraudulent cashier's check, in the approximate amount of $50,000, as payment of the lease for the Family Member's MB-2. |
| 6 | April 3, 2017 | Company Two | A fraudulent cashier's check, in the approximate amount of $300,000, as a payment for defendant Dxrams' Rolls Royce. |
| 7 | May 2, 2017 | Company Three | A fraudulent cashier's check, in the approximate amount of $53,000, as a payment for defendant Dxrams' MB-1. |
| 8 | May 2, 2017 | Company Two | A fraudulent cashier's check, in the approximate amount of $300,000, as a payment for defendant Dxrams' Rolls Royce. |
| 9 | June 21, 2017 | Company Three | A fraudulent cashier's check, in the approximate amount of $38,000, as a payment for MB-2, a car leased by the Family Member. |
| 10 | June 21, 2017 | Company Three | A fraudulent cashier's check, in the approximate amount of $116,000, as a payment for defendant Dxrams' MB-3. |

All in violation of Title 18, United States Code, Sections 1341, 1349, and 2.

<u>Count Eleven</u>
(Falsification in Bankruptcy Proceedings)

1.      The allegations set forth in Paragraph 1 and Paragraphs 4 through 7 of Count One of this Superseding Indictment are realleged and incorporated as if set forth herein.

<u>The Bankruptcy Process</u>

2.      Bankruptcy provides debtors with an opportunity to obtain a fresh financial start through the discharge of their debts.  A voluntary bankruptcy case is commenced by the filing of a bankruptcy petition, and the person filing the petition is referred to as a "debtor."  The bankruptcy process is conducted in federal court, is governed by the United States Bankruptcy Code, and requires the debtor to truthfully, accurately, and completely disclose information concerning his or her financial affairs.

3.      At the time the debtor files his or her bankruptcy petition, a debtor is required to truthfully, accurately, and completely disclose his or her financial circumstances, including assets and liabilities, among other things.  As part of the bankruptcy process, the debtor is required to truthfully complete a series of bankruptcy forms, including, but not limited to, "Schedule A/B: Property," "Schedule I: Your Income," and "Statement of Financial Affairs for Individuals Filing for Bankruptcy."  These forms are signed or declared under penalty of perjury.

4.      Under a Chapter 7 bankruptcy, a bankruptcy trustee is assigned to the bankruptcy case, and the bankruptcy trustee is responsible for the debtor's

bankruptcy estate.  The debtor is required to attend a "Section 341 Meeting of

Creditors" (the "Section 341 Meeting").  During this meeting, the debtor is placed

under oath by the bankruptcy trustee and questioned about his or her financial

affairs, including but not limited to, the bankruptcy petition and the information

contained within the forms described in Paragraph 3 of this Count.

<u>Defendant Dxrams' Bankruptcy Petition</u>

5.      On or about December 11, 2017, defendant Dxrams, after legally

changing his name to "Daniel Kusi," filed and caused to be filed in the United

States Bankruptcy Court in the District of New Jersey a Chapter 7 bankruptcy

petition and corresponding forms and schedules (collectively the "Bankruptcy

Petition") entitled <u>In re Daniel Kusi</u>, Case No.: 17-34849 (JKS).  Defendant

Dxrams signed his Bankruptcy Petition under penalty of perjury.

6.      At the time defendant Dxrams filed his Bankruptcy Petition, he was

married and resided in the same residence as his spouse in Maplewood, New

Jersey.

7.      On his Bankruptcy Petition, defendant Dxrams falsified, made false

entries, covered up, and concealed the following matters:

| Item | Schedule or Form | Question | Matter Falsified or Concealed |
|------|------------------|----------|-------------------------------|
| a. | Schedule A/B: Property, Q10 (p. 11) | Do you own or have any legal or equitable interest in any firearm? | Defendant Dxrams concealed his ownership and interest in three firearms, namely:<br><br>(1) Sig Sauer P226 .40 caliber handgun;<br><br>(2) Sig Sauer P220X6 .45 caliber handgun; and<br><br>(3) Beretta 92 9mm handgun. |
| b. | Schedule A/B: Property, Q33 (p. 13) | Claims against third parties, whether or not you have filed a lawsuit or made a demand for payment. | Defendant Dxrams concealed that on or about November 27, 2017, he commenced a lawsuit in federal court in the District of New Jersey, demanding approximately $74,000 from a defendant. (17-12038)(JMV-JBC).<br><br>Defendant Dxrams concealed that on or about November 27, 2017, he commenced a second lawsuit in federal court in the District of New Jersey, demanding approximately $75,000 from another defendant. (17-12040)(NLH-JS). |
| c. | Schedule I: Your Income, Q1 (p. 28) | Describe Employment, including self-employed work and spouse's work. | Defendant Dxrams concealed his self-employment with his car rental service and his spouse's employment with the State of New Jersey. |
| d. | Statement of Financial Affairs, Q1 (p. 33) | What is your current marital status? | Defendant Dxrams falsely claimed that he was "not married." |
| e. | Statement of Financial Affairs, Q4 (p. 33) | Did you have any income from employment or from operating a business during this year (2017) or the two | Defendant Dxrams concealed that he operated a business and derived gross income from a business in 2017. In truth and in fact, defendant Dxrams operated a car rental |

| Item | Schedule or Form | Question | Matter Falsified or Concealed |
|---|---|---|---|
| | | previous calendar years (2016 and 2015)? | business and earned at least $32,000 in gross receipts or sales from his operation of this business in 2017. |
| | | | Defendant Dxrams concealed that he operated a business and derived gross income from a business in 2016.  In truth and in fact, defendant Dxrams operated a car rental business and earned at least $48,000 in gross receipts or sales from his operation of this business in 2016. |
| | | | Defendant Dxrams concealed that he operated a business and derived gross income from a business in 2015.  In truth and in fact, defendant Dxrams operated a car rental business and earned at least $4,000 in gross receipts or sales from his operation of this business in 2015. |
| f. | Statement of Financial Affairs, Q5 (p. 34) | Did you receive any other income during this year (2017) or the two previous calendar years (2016 and 2015), including money collected from lawsuits? | Defendant Dxrams concealed that in 2017 he received income and deposited over $90,000 into his individual Wells Fargo bank account, including approximately $76,000 from the sale of the Bentley. |
| | | | Defendant Dxrams concealed that in 2016 he received income and deposited over $40,000 into his individual Wells Fargo bank account, including approximately $7,361.88 resulting from a personal injury lawsuit he |

| Item | Schedule or Form | Question | Matter Falsified or Concealed |
|------|------------------|----------|-------------------------------|
| | | | commenced in Middlesex County, New Jersey. |
| g. | Statement of Financial Affairs, Q9 (p. 35) | Within one year before filing for bankruptcy, were you a party in any lawsuit? | Defendant Dxrams concealed that on or about November 27, 2017, he commenced a lawsuit in federal court in the District of New Jersey, demanding approximately $74,000 from a defendant. (17-12038)(JMV-JBC). Defendant Dxrams concealed that on or about November 27, 2017, he commenced a second lawsuit in federal court in the District of New Jersey, demanding approximately $75,000 from another defendant. (17-12040)(NLH-JS). |
| h. | Statement of Financial Affairs, Q18 (p. 37) | Within 2 years before filing for bankruptcy, did you sell, trade, or otherwise transfer any property to anyone, other than property transferred in the ordinary course of your business or financial affairs? | Defendant Dxrams concealed his sale and transfer of the Bentley in or about March 2017 for approximately $82,000. Defendant Dxrams concealed his transfer of approximately $25,000 to Co-Conspirator Two on or about March 30, 2017. |
| i. | Statement of Financial Affairs, Q27 (p. 38) | Within 4 years before you filed for bankruptcy, did you own a business or have a connection to any business as a sole proprietor or self-employed in a trade, profession, or other activity, either | Defendant Dxrams concealed that he operated a business, namely, a car rental business, in 2015, 2016, and 2017. |

| Item | Schedule or Form | Question | Matter Falsified or Concealed |
|------|------------------|----------|-------------------------------|
|      |                  | full time or part time? |                   |

### The Charge

8.      On or about December 11, 2017, in Essex County, in the District of

New Jersey and elsewhere, defendant

DANIEL K. DXRAMS,
a/k/a "Daniel Kusi,"
a/k/a "Danny D. Dxrams,"
a/k/a "Randy N. Amoateng,"

in a case filed under Title 11 of the United States Bankruptcy Code, and in

relation to and in contemplation of such case, namely, his Chapter 7 Voluntary

Petition for Individuals Filing for Bankruptcy and corresponding forms and

schedules (Case No.: 17-34849)(JKS), as described in Paragraph 5 of this Count,

knowingly concealed, covered up, falsified, and made false entries in said

bankruptcy petition and corresponding forms and schedules, as described in

Paragraph 7 of this Count, and caused the same, with the intent to impede,

obstruct, and influence the proper administration of a case filed under Title 11.

In violation of Title 18, United States Code, Sections 1519 and 2.

- 16 -

<u>Count Twelve</u>
(Bankruptcy Fraud—False Oath)

1.      The allegations set forth in Paragraph 1 and Paragraphs 4 through 7 of Count One and Paragraphs 2 through 7 of Count Eleven of this Superseding Indictment are realleged and incorporated as if set forth herein.

2.      On or about January 8, 2018, in Newark, New Jersey, defendant Dxrams appeared at his Section 341 Meeting related to his Bankruptcy Petition, <u>In re Daniel Kusi</u>, Case No.: 17-34849 (JKS).  After being placed under oath, defendant Dxrams acknowledged that his Bankruptcy Petition, including all schedules, was accurate, and he denied transferring anything of value to any person in the last two or three years.

<u>The Charge</u>

3.      On or about January 8, 2018, in Essex County, in the District of New Jersey and elsewhere, defendant

DANIEL K. DXRAMS,
a/k/a "Daniel Kusi,"
a/k/a "Danny D. Dxrams,"
a/k/a "Randy N. Amoateng,"

during a Section 341 Meeting, knowingly and fraudulently made a false oath and account in and in relation to a case under Title 11 of the United States Bankruptcy Code by falsely swearing under oath that his Bankruptcy Petition, including all schedules, was accurate and that he had not transferred anything of value to any person in the last two or three years.

In violation of Title 18, United States Code, Sections 152(2) and 2.

- 17 -

## Forfeiture Allegation

1.      As the result of committing the offenses constituting specified

unlawful activity, as defined in Title 18, United States Code, Section 1956(c)(7),

as alleged in Counts One through Ten of this Superseding Indictment, defendant

DANIEL K. DXRAMS,
a/k/a "Daniel Kusi,"
a/k/a "Danny D. Dxrams,"
a/k/a "Randy N. Amoateng,"

shall forfeit to the United States, pursuant to Title 18, United States Code,

Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), all

property, real and personal, that constitutes or is derived from proceeds

traceable to the commission of the mail fraud conspiracy and substantive mail

fraud offenses, and all property traceable thereto, including, but not limited to, a

sum of money equal to at least $82,000 in United States currency.

## Substitute Assets Provision

2.      If any of the above-described forfeitable property, as a result of any

act or omission of defendant Dxrams:

   a.      cannot be located upon the exercise of due diligence;

   b.      has been transferred or sold to, or deposited with, a third

           person;

   c.      has been placed beyond the jurisdiction of the Court;

   d.      has been substantially diminished in value; or

   e.      has been commingled with other property which cannot be

           subdivided without difficulty;

- 18 -

it is the intent of the United States, pursuant to Title 21, United States Code,

Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c),

to seek forfeiture of any other property of defendant Dxrams up to the value of

the above forfeitable property.

A TRUE BILL

Foreperson

_Craig Carpenito_
CRAIG CARPENITO
United States Attorney

CASE NUMBER: 18-cr-379-WHW

# United States District Court
## District of New Jersey

UNITED STATES OF AMERICA

v.

DANIEL K. DXRAMS,
a/k/a "Daniel Kusi,"
a/k/a "Danny D. Dxrams,"
a/k/a "Randy N. Amoateng"

# SUPERSEDING INDICTMENT FOR

18 U.S.C. §§ 1341, 1349, 1519, 152(2), and 2

A True Bill.

_____
Foreperson

CRAIG CARPENITO
UNITED STATES ATTORNEY
FOR THE DISTRICT OF NEW JERSEY

ANTHONY MOSCATO
ASSISTANT U.S. ATTORNEY
NEWARK, NEW JERSEY
973-645-2752