2018R00678/am & lsh

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Hon. William H. Walls |
| v. | : | Criminal Number: 18-379 (WHW) |
| GERMAINE H. KING,<br>a/k/a "Germaine Howard"<br>DANIEL K. DXRAMS,<br>currently as "Daniel Kusi,"<br>formerly known as "Danny D. Dxrams",<br>"Randy N. Amoateng" | : | 18 U.S.C. §§ 1341, 1344, 1349, 1519, 152(2), and 2 |

AMENDED

# SECOND SUPERSEDING INDICTMENT

## Count One
(Conspiracy to Commit Bank and Mail Fraud)

The Grand Jury in and for the District of New Jersey, sitting at Newark, charges as follows:

### Introduction

The Defendant and Others:

1. At various times relevant to Count One of this Second Superseding Indictment:

a. Defendant Germaine H. King ("King") was a resident of Elizabeth, New Jersey.

b. Co-Conspirator One, an individual not named as a defendant herein, resided with defendant King in Elizabeth, New Jersey (the "Elizabeth Residence").

c. Co-Conspirator Two was an individual not named as a defendant herein.

The Victim Entities

d. Financial Institution One was a "financial institution" within the meaning of Title 18, United States Code, Sections 20 and 27.

e. Financial Institution Two was a "financial institution" within the meaning of Title 18, United States Code, Sections 20 and 27. Two mortgage service companies were subsidiaries of Financial Institution Two (collectively "Financial Institution Two").

f. A retail store was headquartered in Ohio (the "Retail Store").

g. A home improvement store was headquartered in Georgia (the "Home Improvement Store").

The Conspiracy

2. From in or about March 2014 through in or about July 2015, in Union and Essex Counties, in the District of New Jersey and elsewhere, defendant

GERMAINE H. KING, a/k/a "Germaine Howard,"

knowingly and intentionally conspired and agreed with Co-Conspirator One, Co-Conspirator Two, and others to:

a. devise and intend to devise a scheme and artifice to defraud the Victim Entities described in Paragraph 1d-1g above, and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises, and for the purpose of executing the scheme and

artifice to defraud, caused to be placed in a United States post office or other authorized depository for mail matter, items to be delivered by the United States Postal Service according to the directions thereon, and caused to be deposited items to be sent and delivered by private and commercial interstate carriers, contrary to Title 18, United States Code, Section 1341; and

b. execute a scheme and artifice to defraud financial institutions, namely, Financial Institution One, and Financial Institution Two, and to obtain money, funds, and assets owned by and under the custody and control thereof, by means of false and fraudulent pretenses, representations, and promises, contrary to Title 18, United States Code, Section 1344.

<u>The Object of the Conspiracy</u>

3. The object of the conspiracy was to defraud the Victim Entities by fraudulently discharging lawful mortgages, loans, debts, and other financial obligations (the "Debt Elimination Scheme").

<u>Manner and Means of the Conspiracy</u>

4. It was part of the conspiracy that defendant King and Co-Conspirator One made fictitious money orders, corresponding receipts, and other false and fraudulent documents on their home computer. These money orders falsely purported to be issued or backed by the United States Government.

5. It was further part of the conspiracy that defendant King and Co-Conspirator One mailed and caused to be mailed the fictitious money orders

to the Victim Entities described in Paragraph 1d-1g above for the purpose of advancing the Debt Elimination Scheme.

6. For example:

a. On or before March 11, 2014, defendant King requested a payoff quote from Financial Institution One for a loan on a 2007 Mercedes-Benz.

b. On or about May 6, 2014, defendant King received an email from Co-Conspirator Two. This email's subject line stated, "Per your request, My secret weapon is now your secret weapon," and contained an attachment of a fraudulent money order and money order receipt. Thereafter, defendant King and Co-Conspirator One used this attachment as a template to create fraudulent money orders and money order receipts.

c. On or about May 12, 2014, defendant King mailed and caused to be mailed a fraudulent money order, in the approximate amount of $22,260, to Financial Institution One as a payment toward a car loan.

d. On or about May 12, 2014, Co-Conspirator One mailed a fraudulent money order, in the approximate amount of $39,585, to Financial Institution One as payment toward a car loan.

e. On or about May 15, 2014, Co-Conspirator One sent an email to defendant King. This email included as an attachment a copy of a fraudulent letter sent to the Chief Financial Officer of Financial Institution Two, as described in Paragraph 6g below.

f. On or about May 17, 2014, Co-Conspirator One sent an email to defendant King. This email included as an attachment two fraudulent money orders, including the fraudulent $432,000 money order sent to Financial Institution Two, as described in Paragraph 6g below.

g. On or about May 19, 2014, Co-Conspirator One mailed a fraudulent money order, in the approximate amount of $432,000, to Financial Institution Two, resulting in the fraudulent discharge of a mortgage on the Elizabeth Residence. As part of this mailing, Co-Conspirator One included a letter, directing the Chief Financial Officer of Financial Institution Two to process the fraudulent money order and discharge the mortgage on the Elizabeth Residence.

h. On or about May 27, 2014, defendant King mailed and caused to be mailed a fraudulent money order, in the approximate amount of $9,000, to the Retail Store as a payment toward his credit card account.

i. On or about May 29, 2014, defendant King mailed and caused to be mailed a fraudulent money order, in the approximate amount of $1,700, to the Home Improvement Store as a payment toward his credit card account.

j. On or about July 23, 2015, defendant King mailed and caused to be mailed a fraudulent money order, in the approximate amount of $1,700, to the Home Improvement Store as a payment toward his credit card account.

All in violation of Title 18, United States Code, Section 1349.

Counts Two through Four
(Bank Fraud)

1. The allegations set forth in Paragraph 1 and Paragraph 4 through 6 of Count One of this Second Superseding Indictment are realleged as if set forth herein.

2. On or about the dates set forth below, in Essex and Union Counties, in the District of New Jersey, defendant

GERMAINE H. KING, a/k/a "Germaine Howard"

knowingly and intentionally executed and attempted to execute a scheme and artifice to defraud financial institutions, as set forth below, and to obtain money, funds, credits, assets, securities, and other property owned by and under the custody and control thereof, by means of false and fraudulent pretenses, representations, and promises, as follows:

| Count | Approximate Date | Financial Institution | Description |
|---|---|---|---|
| Two | May 12, 2014 | Financial Institution One | A fraudulent money order, in the approximate amount of $22,260 as a payment on a car loan. |
| Three | May 12, 2014 | Financial Institution One | A fraudulent money order, in the approximate amount of $39,585 as payment on a car loan. |
| Four | May 19, 2014 | Financial Institution Two | A fraudulent money order, in the approximate amount of $432,000, resulting in the fraudulent discharge of a mortgage on the Elizabeth Residence. |

In violation of Title 18, United States Code, Sections 1344 and 2.

Count Five
(Conspiracy to Commit Mail Fraud)

1. The allegations set forth in Paragraph 1a and 1b of Count One of this Second Superseding Indictment are realleged as if set forth herein.

2. At various times relevant to Count Five of this Second Superseding Indictment:

a. Defendant Daniel K. Dxrams, currently known as "Daniel Kusi," formerly known as Danny D. Dxrams" ("Dxrams"), was a resident of Maplewood, New Jersey. Defendant Dxrams was employed by the State of New Jersey. In addition, defendant Dxrams was the sole proprietor and owner of Dxrams Auction, a purported online auction business. Defendant Dxrams also operated a car rental service.

The Victim Auto Leasing Companies

b. A company provided financing for the purchase of luxury cars ("Company One").

c. A company provided financing for the purchase of luxury cars ("Company Two").

d. A company provided financing for the purchase of luxury cars ("Company Three").

The Luxury Cars

e. In or about March 2013, defendant Dxrams leased a 2012 Bentley (the "Bentley"), and Company One was assigned the rights under this lease. The price of the Bentley was approximately $184,000.

f. In or about March 2016, defendant Dxrams leased a 2016 Rolls Royce Coupe (the "Rolls Royce"), and Company Two provided the financing for the Rolls Royce. The price of the Rolls Royce was approximately $339,075.

g. In or about March 2015, defendant Dxrams leased a 2015 Mercedes-Benz ("MB-1"). The price of MB-1 was approximately $43,409. In or about March 2015, defendant Dxrams' family member (the "Family Member") leased a 2015 Mercedes-Benz ("MB-2"). The price of MB-2 was approximately $41,850. In or about February 2016, defendant Dxrams leased a 2016 Mercedes-Benz ("MB-3"). The price of MB-3 was approximately $104,736. Company Three provided the financing for MB-1, MB-2, and MB-3.

The Conspiracy

3. From in or about February 2017 through in or about July 2017, in Union and Essex Counties, in the District of New Jersey and elsewhere, defendants

GERMAINE H. KING, a/k/a "Germaine Howard"
and
DANIEL K. DXRAMS,
currently known as "Daniel Kusi,"
formerly known as "Danny D. Dxrams,"

knowingly and intentionally conspired and agreed with each other, Co-Conspirator One, and others to devise and intend to devise a scheme and artifice to defraud the Victim Auto Leasing Companies, as described in Paragraph 2b through 2d of this Count, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and for the purpose of executing the scheme and artifice to defraud, caused to be placed in a United States post office or other authorized depository for mail matter, items to be delivered by the United States Postal Service according to the directions thereon, and caused to be deposited items to be sent and delivered by private and commercial interstate carriers, as set forth below, contrary to Title 18, United States Code, Section 1341.

Object of the Conspiracy

4. The object of the conspiracy was to unlawfully obtain money and property by fraudulently discharging the lawful debts of defendant Dxrams and the Family Member.

Manner and Means of the Conspiracy

5. It was part of the conspiracy that defendant Dxrams provided information and documents, including payoff information related to the luxury cars and a mortgage, to defendant King and Co-Conspirator One.

6. It was further part of the conspiracy that defendant Dxrams, defendant King, and Co-Conspirator One made and caused to be made fraudulent cashier's checks, payable to the Victim Auto Leasing Companies, for the purpose of fraudulently discharging defendant Dxrams' and the Family Member's lawful financial obligations related to the luxury cars.

7. It was further part of the conspiracy that Co-Conspirator One, defendant King, and defendant Dxrams mailed and caused to be mailed the fraudulent cashier's checks to the Victim Auto Leasing Companies.

8. For example:

a. In or about February 2017, defendant Dxrams gave payoff information and quotes for the leases for MB-1, MB-3, the Bentley, and the mortgage on the Family Member's residence in Maplewood, New Jersey, to defendant King and Co-Conspirator One.

b. On or about February 27, 2017, Co-Conspirator One signed a fraudulent cashier's check, payable to Company Three and in the approximate amount of $51,000, as a payment of the lease for defendant Dxrams' MB-1. Thereafter, this fraudulent cashier's check was mailed to Company Three.

c. On or about February 27, 2017, Co-Conspirator One signed a fraudulent cashier's check, payable to Company One and in the approximate amount of $101,000, as a payment of the lease for defendant Dxrams' Bentley. Thereafter, this fraudulent cashier's check was mailed to Company One. Company One, believing this cashier's check was legitimate, accepted it as a payoff of the Bentley and issued title of the Bentley to defendant Dxrams. Company One mailed this title to defendant Dxrams via Federal Express.

d. On or about February 27, 2017, Co-Conspirator One signed a fraudulent cashier's check, payable to Company Two and in the approximate amount of $300,000, as payment of the lease for defendant Dxrams' Rolls Royce. Thereafter, this fraudulent cashier's check was mailed to Company Two.

e. On or about February 27, 2017, Co-Conspirator One signed another fraudulent cashier's check, payable to Company Two and in the approximate amount of $300,000, as a second payment of the lease for defendant Dxrams' Rolls Royce. Thereafter, on or before April 4, 2017, this fraudulent cashier's check was mailed to Company Two.

f. On or about February 27, 2017, Co-Conspirator One signed a fraudulent cashier's check, payable to Company Three and in the approximate

amount of $112,000, as a payment of the lease for defendant Dxrams' MB-3. Thereafter, this fraudulent cashier's check was mailed to Company Three.

g. In or about March 2017, after receiving a fraudulent cashier's check in the approximate amount of $51,000, Company Three released title of the MB-1 to defendant Dxrams.

h. On or about March 9, 2017, a fraudulent cashier's check, payable to Company Three and in the approximate amount of $50,000, was mailed to Company Three, as payment of the lease for the Family Member's MB-2.

i. On or about March 10, 2017, Company Three mailed a letter to defendant Dxrams, advising him that the $51,000 payment, which payment resulted in him receiving title to MB-1, was returned unpaid by the bank. In this letter, Company Three advised defendant Dxrams that he owed approximately $51,063, the full balance of the lease, and it was a "serious matter."

j. On or about March 15, 2017, Company Three mailed a letter to defendant Dxrams' residence and addressed to the Family Member, advising the Family Member that the $50,000 payment for MB-2 was returned unpaid by the bank, and the balance due on MB-2 was approximately $39,204.

k. On or about March 21, 2017, defendant Dxrams entered into a contract to sell the Bentley to a third party for approximately $82,000. On this contract, defendant Dxrams, a resident of Maplewood, New Jersey, used an address in Stroudsburg, Pennsylvania, where he did not reside.

l. On or about March 28, 2017, defendant Dxrams deposited a check, in the approximate amount of $67,000 and drawn on the third party's account, into defendant Dxram's bank account. In addition, on or about March 28, 2017 and as part of the sale of the Bentley, the third party issued defendant Dxrams a second check, in the approximate amount of $6,000, which check defendant Dxrams signed back to the third party to pay for expenses related to the sale. Finally, on or about March 28, 2017, the third party gave defendant Dxrams approximately $9,000 in cash.

m. On or about March 30, 2017, defendant Dxrams issued a genuine cashier's check, in the approximate amount of $25,000, to defendant King. On or about April 6, 2017, this genuine cashier's check was deposited into defendant King's bank account.

n. On or about March 30, 2017, defendant Dxrams issued a genuine cashier's check, in the approximate amount of $17,000, to the Family Member.

o. On or about April 20, 2017, after receiving an e-mail from Company One concerning his Bentley account, defendant Dxrams replied via e-mail: "Hi, please make a note on the account that the car is being paid off within the next week. DX." Defendant Dxrams, who had sold the Bentley, did not make any payments to Company One for the Bentley.

p. On or about May 2, 2017, Co-Conspirator One signed a fraudulent cashier's check, payable to Company Three and in the approximate

amount of $53,000, as payment of the lease of defendant Dxrams' MB-1. Thereafter, this fraudulent cashier's check was mailed to Company Three.

q. On or about May 2, 2017, Co-Conspirator One signed a fraudulent cashier's check, payable to Company Two and in the approximate amount of $300,000, as payment of the lease for defendant Dxrams' Rolls Royce. Thereafter, this fraudulent cashier's check was mailed to Company Two.

r. On or about June 21, 2017, Co-Conspirator One signed a fraudulent cashier's check, payable to Company Three and in the approximate amount of $38,000, as payment of the lease for the Family Member's MB-2. On or about June 22, 2017, this fraudulent cashier's check was mailed to Company Three.

s. On or about June 21, 2017, Co-Conspirator One signed a fraudulent cashier's check, payable to Company Three and in the approximate amount of $116,000, as payment of the lease of defendant Dxrams' MB-3. Thereafter, this fraudulent cashier's check was mailed to Company Three.

t. In or about late July 2017, defendant Dxrams filed a lawsuit in federal court in the District of New Jersey, wherein he falsely asserted that he had paid off the Bentley in full with certified funds on or about February 27, 2017, namely, the fraudulent $101,000 cashier's check signed by Co-Conspirator One.

All in violation of Title 18, United States Code, Section 1349.

<u>Counts Six Through Fifteen</u>
(Mail Fraud)

1. The allegations set forth in Paragraphs 1 through 2 and Paragraphs 5 through 8 of Count Five of this Superseding Indictment are realleged and incorporated as if set forth herein.

2. On or about the dates set forth below, for the purpose of executing the scheme and artifice to defraud, and attempting to do so, in Union and Essex Counties, in the District of New Jersey and elsewhere, defendants

GERMAINE H. KING, a/k/a "Germaine Howard"
and
DANIEL K. DXRAMS,
currently know as "Daniel Kusi,"
formerly known as "Danny D. Dxrams,"

knowingly caused to be placed in a United States post office and other authorized depository for mail matter, and aided and abetted the same, items to be delivered by the United States Postal Service according to the directions thereon, and caused to be deposited items to be sent and delivered by private and commercial interstate carriers, as set forth below:

| Count | Approximate Date of Mailing | Payee | Description of Mail Matter |
|---|---|---|---|
| 6 | February 27, 2017 | Company Three | A fraudulent cashier's check, in the approximate amount of $51,000, as a payment for defendant Dxrams' MB-1. |
| 7 | February 27, 2017 | Company One | A fraudulent cashier's check, in the approximate amount of $101,000, as a payment for defendant Dxrams' Bentley. |
| 8 | February 27, 2017 | Company Two | A fraudulent cashier's check, in the approximate amount of $300,000, |

| Count | Approximate Date of Mailing | Payee | Description of Mail Matter |
|---|---|---|---|
| | | | as a payment for defendant Dxrams' Rolls Royce. |
| 9 | February 27, 2017 | Company Three | A fraudulent cashier's check, in the approximate amount of $112,000, as a payment for defendant Dxrams' MB-3. |
| 10 | March 9, 2017 | Company Three | A fraudulent cashier's check, in the approximate amount of $50,000, as payment of the lease for the Family Member's MB-2. |
| 11 | April 4, 2017 | Company Two | A fraudulent cashier's check, in the approximate amount of $300,000, as a payment for defendant Dxrams' Rolls Royce. |
| 12 | May 2, 2017 | Company Two | A fraudulent cashier's check, in the approximate amount of $300,000, as a payment for defendant Dxrams' Rolls Royce. |
| 13 | May 9, 2017 | Company Three | A fraudulent cashier's check, in the approximate amount of $53,000, as a payment for defendant Dxrams' MB-1. |
| 14 | June 21, 2017 | Company Three | A fraudulent cashier's check, in the approximate amount of $116,000, as a payment for defendant Dxrams' MB-3. |
| 15 | June 22, 2017 | Company Three | A fraudulent cashier's check, in the approximate amount of $38,000, as a payment for MB-2, a car leased by the Family Member. |

In violation of Title 18, United States Code, Sections 1341, 1349, and 2.

Count Sixteen
(Falsification in Bankruptcy Proceedings)

1. The allegations set forth in Paragraph 1 through 2 and Paragraphs 5 through 8 of Count Five of this Second Superseding Indictment are realleged and incorporated as if set forth herein.

The Bankruptcy Process

2. Bankruptcy provides debtors with an opportunity to obtain a fresh financial start through the discharge of their debts. A voluntary bankruptcy case is commenced by the filing of a bankruptcy petition, and the person filing the petition is referred to as a "debtor." The bankruptcy process is conducted in federal court, is governed by the United States Bankruptcy Code, and requires the debtor to truthfully, accurately, and completely disclose information concerning his or her financial affairs.

3. At the time the debtor files his or her bankruptcy petition, a debtor is required to truthfully, accurately, and completely disclose his or her financial circumstances, including assets and liabilities, among other things. As part of the bankruptcy process, the debtor is required to truthfully complete a series of bankruptcy forms, including, but not limited to, "Schedule A/B: Property," "Schedule I: Your Income," and "Statement of Financial Affairs for Individuals Filing for Bankruptcy." These forms are signed or declared under penalty of perjury.

4. Under a Chapter 7 bankruptcy, a bankruptcy trustee is assigned to the bankruptcy case, and the bankruptcy trustee is responsible for the debtor's bankruptcy estate. The debtor is required to attend a "Section 341 Meeting of Creditors" (the "Section 341 Meeting"). During this meeting, the debtor is placed under oath by the bankruptcy trustee and questioned about his or her financial affairs, including but not limited to, the bankruptcy petition and the information contained within the forms described in Paragraph 3 of this Count.

Defendant Dxrams' Bankruptcy Petition

5. On or about December 11, 2017, defendant Dxrams, after legally changing his name to "Daniel Kusi," filed and caused to be filed in the United States Bankruptcy Court in the District of New Jersey a Chapter 7 bankruptcy petition and corresponding forms and schedules (collectively the "Bankruptcy Petition") entitled In re Daniel Kusi, Case No.: 17-34849 (JKS). Defendant Dxrams signed his Bankruptcy Petition under penalty of perjury.

6. At the time defendant Dxrams filed his Bankruptcy Petition, he was married and resided in the same residence as his spouse in Maplewood, New Jersey.

7. On his Bankruptcy Petition, defendant Dxrams falsified, made false entries, covered up, and concealed the following matters:

| Item | Schedule or Form | Question | Matter Falsified or Concealed |
|---|---|---|---|
| a. | Schedule A/B: Property, Q10 (p. 11) | Do you own or have any legal or equitable interest in any firearm? | Defendant Dxrams concealed his ownership and interest in three firearms, namely:<br><br>(1) Sig Sauer P226 .40 caliber handgun;<br><br>(2) Sig Sauer P220X6 .45 caliber handgun; and<br><br>(3) Beretta 92 9mm handgun. |
| b. | Schedule A/B: Property, Q33 (p. 13) | Claims against third parties, whether or not you have filed a lawsuit or made a demand for payment. | Defendant Dxrams concealed that on or about November 27, 2017, he commenced a lawsuit in federal court in the District of New Jersey, demanding approximately $74,000 from a defendant. (17-12038)(JMV-JBC).<br><br>Defendant Dxrams concealed that on or about November 27, 2017, he commenced a second lawsuit in federal court in the District of New Jersey, demanding approximately $75,000 from another defendant. (17-12040)(NLH-JS). |
| c. | Schedule I: Your Income, Q1 (p. 28) | Describe Employment, including self-employed work and spouse's work. | Defendant Dxrams concealed his self-employment with his car rental service and his spouse's employment with the State of New Jersey. |
| d. | Statement of Financial Affairs, Q1 (p. 33) | What is your current marital status? | Defendant Dxrams falsely claimed that he was "not married." |
| e. | Statement of Financial Affairs, Q4 (p. 33) | Did you have any income from employment or from operating a business during this year | Defendant Dxrams concealed that he operated a business and derived gross income from a business in 2017. In truth and in fact, defendant |

| Item | Schedule or Form | Question | Matter Falsified or Concealed |
|---|---|---|---|
| | | (2017) or the two previous calendar years (2016 and 2015)? | Dxrams operated a car rental business and earned at least $32,000 in gross receipts or sales from his operation of this business in 2017.<br><br>Defendant Dxrams concealed that he operated a business and derived gross income from a business in 2016. In truth and in fact, defendant Dxrams operated a car rental business and earned at least $48,000 in gross receipts or sales from his operation of this business in 2016.<br><br>Defendant Dxrams concealed that he operated a business and derived gross income from a business in 2015. In truth and in fact, defendant Dxrams operated a car rental business and earned at least $4,000 in gross receipts or sales from his operation of this business in 2015. |
| f. | Statement of Financial Affairs, Q5 (p. 34) | Did you receive any other income during this year (2017) or the two previous calendar years (2016 and 2015), including money collected from lawsuits? | Defendant Dxrams concealed that in 2017 he received income and deposited approximately $105,000 into his individual Wells Fargo bank account, including approximately $76,000 from the sale of the Bentley.<br><br>Defendant Dxrams concealed that in 2016 he received income and deposited approximately $52,000 into his individual Wells Fargo bank account, including |

| Item | Schedule or Form | Question | Matter Falsified or Concealed |
|---|---|---|---|
| | | | approximately $7,361.88 resulting from a personal injury lawsuit he commenced in Middlesex County, New Jersey. |
| g. | Statement of Financial Affairs, Q9 (p. 35) | Within one year before filing for bankruptcy, were you a party in any lawsuit? | Defendant Dxrams concealed that on or about November 27, 2017, he commenced a lawsuit in federal court in the District of New Jersey, demanding approximately $74,000 from a defendant. (17-12038)(JMV-JBC).<br><br>Defendant Dxrams concealed that on or about November 27, 2017, he commenced a second lawsuit in federal court in the District of New Jersey, demanding approximately $75,000 from another defendant. (17-12040)(NLH-JS). |
| h. | Statement of Financial Affairs, Q18 (p. 37) | Within 2 years before filing for bankruptcy, did you sell, trade, or otherwise transfer any property to anyone, other than property transferred in the ordinary course of your business or financial affairs? | Defendant Dxrams concealed his sale and transfer of the Bentley in or about March 2017 for approximately $82,000.<br><br>Defendant Dxrams concealed his transfer of approximately $25,000 to Co-Conspirator Two on or about March 30, 2017. |
| i. | Statement of Financial Affairs, Q27 (p. 38) | Within 4 years before you filed for bankruptcy, did you own a business or have a connection to any business as a sole proprietor or self-employed in a trade, | Defendant Dxrams concealed that he operated a business, namely, a car rental business, in 2015, 2016, and 2017. |

| Item | Schedule or Form | Question | Matter Falsified or Concealed |
|---|---|---|---|
| | | profession, or other activity, either full time or part time? | |

The Charge

8. On or about December 11, 2017, in Essex County, in the District of New Jersey and elsewhere, defendant

DANIEL K. DXRAMS,
currently known as "Daniel Kusi,"
formerly known as "Danny D. Dxrams,"

in a case filed under Title 11 of the United States Bankruptcy Code, and in relation to and in contemplation of such case, namely, his Chapter 7 Voluntary Petition for Individuals Filing for Bankruptcy and corresponding forms and schedules (Case No.: 17-34849)(JKS), as described in Paragraph 5 of this Count, knowingly concealed, covered up, falsified, and made false entries in said bankruptcy petition and corresponding forms and schedules, as described in Paragraph 7 of this Count, and caused the same, with the intent to impede, obstruct, and influence the proper administration of a case filed under Title 11.

In violation of Title 18, United States Code, Sections 1519 and 2.

Count Seventeen
(Bankruptcy Fraud—False Oath)

1. The allegations set forth in Paragraphs 1 through 2 and Paragraphs 5 through 8 of Count Five, and Paragraphs 2 through 7 of Count Sixteen, of this Second Superseding Indictment are realleged and incorporated as if set forth herein.

2. On or about January 8, 2018, in Newark, New Jersey, defendant Dxrams appeared at his Section 341 Meeting related to his Bankruptcy Petition, In re Daniel Kusi, Case No.: 17-34849 (JKS). After being placed under oath, defendant Dxrams acknowledged that his Bankruptcy Petition, including all schedules, was accurate, and he denied transferring anything of value to any person in the last two or three years.

The Charge

3. On or about January 8, 2018, in Essex County, in the District of New Jersey and elsewhere, defendant

DANIEL K. DXRAMS,
currently known as "Daniel Kusi,"
formerly known as "Danny D. Dxrams,"

during a Section 341 Meeting, knowingly and fraudulently made a false oath and account in and in relation to a case under Title 11 of the United States Bankruptcy Code by falsely swearing under oath that his Bankruptcy Petition, including all schedules, was accurate and that he had not transferred anything of value to any person in the last two or three years.

In violation of Title 18, United States Code, Sections 152(2) and 2.

First Forfeiture Allegation

1. As the result of committing the offenses constituting specified unlawful activity, as defined in Title 18, United States Code, Section 1956(c)(7), as alleged in Counts One through Five of this Second Superseding Indictment, defendant

GERMAINE H. KING, a/k/a "Germaine Howard"

shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of the mail and bank conspiracies and substantive bank fraud offenses, and all property traceable thereto, including, but not limited to, a sum of money equal to at least $457,000 in United States currency.

Substitute Assets Provision

2. If any of the above-described forfeitable property, as a result of any act or omission of defendant King:

a. cannot be located upon the exercise of due diligence;

b. has been transferred or sold to, or deposited with, a third person;

c. has been placed beyond the jurisdiction of the Court;

d. has been substantially diminished in value; or

e. has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of defendant King up to the value of the above forfeitable property.

Second Forfeiture Allegation

1. As the result of committing the offenses constituting specified unlawful activity, as defined in Title 18, United States Code, Section 1956(c)(7), as alleged in Counts Five through Fifteen of this Second Superseding Indictment, defendant

DANIEL K. DXRAMS,
currently known as "Daniel Kusi,"
formerly known as "Danny D. Dxrams,"

shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of the mail fraud conspiracy and substantive mail fraud offenses, and all property traceable thereto, including, but not limited to, a sum of money equal to at least $82,000 in United States currency.

Substitute Assets Provision

2. If any of the above-described forfeitable property, as a result of any act or omission of defendant Dxrams:

a. cannot be located upon the exercise of due diligence;

b. has been transferred or sold to, or deposited with, a third person;

c. has been placed beyond the jurisdiction of the Court;

d. has been substantially diminished in value; or

e. has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of defendant Dxrams up to the value of the above forfeitable property.

A TRUE BILL

[redacted]

Foreperson

CRAIG CARPENITO
United States Attorney

**CASE NUMBER:** 18-379 (WHW)

**United States District Court**
**District of New Jersey**

UNITED STATES OF AMERICA

v.

GERMAINE H. KING
and
DANIEL K. DXRAMS,
a/k/a "Daniel Kusi,"
a/k/a "Danny D. Dxrams,"
a/k/a "Randy N. Amoateng"

# SECOND SUPERSEDING INDICTMENT FOR

18 U.S.C. §§ 1341, 1344, 1349, 1519, 152(2), and 2

A True Bill,

[redacted]

Foreperson

CRAIG CARPENITO
UNITED STATES ATTORNEY
FOR THE DISTRICT OF NEW JERSEY

ANTHONY MOSCATO
ASSISTANT U.S. ATTORNEY
NEWARK, NEW JERSEY
973-645-2752