IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | DOCKET NO 18-00379-02 |
| V. | : | |
| | : | JUDGE VAZQUEZ |
| DANIEL KUSI | : | |
| | : | PRO SE |

MOTION FOR COMPASSIONATE RELEASE
PURSUANT TO 18 U.S.C. 3582 (c)(1)(A)

AND NOW comes the Movant, Daniel Kusi in a pro se Motion For Compassionate Release Pursuant To 18 U.S.C. 3582 (c)(1)(A). The information contained within avers as follows:

On September 3rd, 2020, Movant made a request to Warden Finley of FCI Schuylkill for compassionate release. This was denied on Sept. 18, 2020. On September 25, 2020, Movant entered a BP-9 of the Administrative Process which was denied on October 9, 2020. On October 23, 2020, Movant entered a BP-10 of the remedy process which had a response date of January 1, 2021. Until this date, this remedy has gone unanswered. See Exhibits (A-D).

Movant was convicted of violating 18: 1349, 18: 1341, 18: 1519, and 18: 152 and sentenced to 57 months followed by 3 years of supervised release. Movant is a first time offender.

ARGUMENT

Movant is housed in a prison camp that has been and continues to have a major outbreak of COVID-19. After 10 months of a national and worldwide pandemic, this prison finally tested its first inmates on December 22, 2020. Two inmates were tested and both were positive. They were sent back to their housing unit which is a dormitory in which it is impossible to social distance and where their unit has one bathroom with 2 urinals, 2 toilets and 3 showers shared by 40 people.

The next morning all the inmates of the camp (136) were tested and 67% were positive. The camp was closed and all inmates were

marched down the road to the Medium security prison where they were locked into cells and given 7 days of Tylenol. COVID-19 positive inmates were kept with negative inmates. There was never any medical care given and until this day no one has seen a doctor or medical staff. Many inmates, myself included suffer serious after effects of COVID-19. At this moment the FCI is having it's most massive outbreak to date with inmates contracting COVID-19 for the second time. When the government states how extraordinary measures are being taken to combat COVID-19 they are completely mislead by the BOP.

On February 18th, 2021, this prison, in a panic, put up signs about social distancing and red X's on the floor, six feet apart. This was done because the CDC is comming to this prison on February 19, 2021. After one year of a national pandemic, the BOP is still using duplictious actions while actually doing nothing to combat the virus. On february 7, 2021, the prison, having extra vaccine due to its personnel's lack of interest, offered the vaccine to certain inmates.

This was within 2 or 3 weeks of inmates having COVID-19 which is not effective until at least 90 days post COVID. This is the recommendation of the CDC. This offer was a day prior to a visit from the regional director. Everything at this prison is a sham. Inmates are constantly exposed to guards and contractors without masks. This is why there is a non-stop outbreak of mass proportions at this prison. The BOP web site has never shown the true numbers of infected or dead.

The Movants medical record states he is fully recovered. This is an impossible diagnosis since Movant has never been examined by medical before or after COVID. The FCI's outbreak has inmates being infected for the second time. The BOP continues to report that many inmates are "recovered" according to Centers for Disease Control and Prevention Guidelines, despite the fact that the number of "recovered" inmates who subsequently die of COVID continues to climb. Last month the BOP reported that Shauntee Hill, an FCI Terre Hautie inmate whom it had declared "recovered" last September, tested positive for COVID-19 December 12, 79 days later and died. The BOP reported that Spencer Sarver, a USP Atlanta

inmate who tested positive for COVID last March was declared "recovered" on April 23, never left the hospital. He died last month. It is plain to anyone that inmates are at a far greater risk of death or serious health consequences from a total lack of proper medical care and constant exposure to the virus. Minimum security camp inmates with no history of violence should be allowed to be removed from these confines for their safety and well being.

The CDC's weekly update: which comorbidites are associated with COVID-19 in the U.S.

Purpose: An important characteristic of COVID-19 is the association between comorbidites and mortality. Underlying health condition risk factors for severe outcomes from respiratory infection include obesity, asthma, high blood pressure and a host of others. Movants underlying health condition meet the criteria for "extraordinary and compelling" reasons for compassionate release under 18 U.S.C. 3582 (c)(1)(A) while under a global and national pandemic.

According to new studies, "patients from ethnic minority groups are disproportunately affected by coronavirus. We performed a systematic review and meta-analysis to explore the relationship between ethnicity and clinical outcomes in COVID-19." Outcomes, "were searched until Aug. 31, 2020, for studies reporting COVID-19 data disaggregated by ethnicity". Outcomes were; risk of infection; intense therapy unit (ITU) admission and death. At this writting, the BOP has experienced the worst outbreak of any federal agency per capita.

The Philadelphia Inquirer reported that "as early as mid-October, U.S. Attorney's opposing compassionate release motions by Fort Dix prisoners, argued that the BOP has taken effective steps to limit the transmission of COVID-19; now that paper said, videos purportedly taken by a prisoner inside building 5812 and circulating among family members show a unit in chaos. Debris scattered and trash overflowing. A bi-product of a shortage of staff and healthy workers according to family members".

This prison is doing worse than Fort Dix. The executive staff has no clue on how to deal with this virus and are deliberately indifferent to the plight of it's prisoners.

<u>3553 (s) Factors</u>

3553(a) factors support a significant reduction in sentence. Movant was sentenced to 57 months imprisonment. He suffers from severe Hypertension which by itself is a killer in the African-American community. Movant went to trial in his case as is the right of any American. By excercising this right, the government takes this as a complete offense and should a citizen lose at trial he is further punished for excercising his constitutional right of doing so. Movant has no violence in his lifes history. Movant has no incident reports since his incarceration and has taken all classes offered to him in an effort to reduce his risk of recidivism.

There have been numerous inmates released by the courts with much worse criminal acts and histories with less severe medical issues.

Movant cites, <u>United States v. Rountree</u>, 1:22-CR-0308, (2nd Cir 5-18-2020) 2020 WL 2610923 at *10. Rountree was sentenced as a career offender. The government, as always, argued that he should remain incarcerated. The court found he was no danger to society and released him to time served. Movant has no history of violence and is no danger to society. Although 3582's exhaustion is not jurisdictional, whether the court can excuse a defendants failure to comply with this statutory requirement is a seperate question.

"Even where" as here, "exhaustion is seemingly mandated by statute... the requirement is not absolute, <u>Washington v. Barr</u>, 925 F. 3d 109, 118 (2nd cir. 2019) "congressional intent is 'paramount' to any determination of whether exhaustion is mandatory." See <u>United States v. Haney</u>, No: 19-CR-541, 2020 WL 182 1988 at, *3 *S.D.N.Y. Apr. 13, 2020) (quoting <u>McCarthy v Madigan</u>, 503 U.S. 140, 144 (1992). In amending 3582 (c)(1)(A) via the First Step Act, congress sought to "expand compassionate release applications".

164 Cong. Rec. S 7314-02, 2018 WL 6350790 (Dec. 5, 2018). See also Hearing on Compassionate Release and the conditions of Supervision Before the U.S. Sentencing Comm's (2016) (Statement of Michael E. Horowitz, Inspector General, Department of Justice). (The First Step Act and the critical 30 day lapse route it provided in 3582 (c)(1)(A) exhaustion requirement) directly responded to a compassionate release system so plagued by delay that prisoners sometimes died while waiting for the BOP to make a decision.

These concerns are reflected in the statute, which instructs courts to consider whether any of a variety of exigent circumstances constitute "extraordinary and compelling reasons" that merit release. See United States v. Soto, No: 18-CR-10086, 2020 WL 1905323 at, *5 (D. Mass. Apr. 7, 2020) (citing 18 U.S.C. 3582 (c)(1)(A), 1B1.13 cmt. n. 1) Whats more, "congress necessarily recognized that time is of the essence for determining whether compassionate release is appropriate." See United States v. Russo, No: 16-CR-441, 2020, (noting that the 30 day rule was intended "as an accelerant to judicial review". ("Individuals in carceral settings are at a "significantly higher" risk of spreading infectious disease"). Recognizing these dangers, several courts have granted compassionate release to prisoners who- like Movant- have health problems that make COVID-19 especially dangerous to them, even where the prison where they were held reported no cases of the virus. See e.g.

United States v. Peters, No: 18-CR-188, WL 2092617 at, *4, (D. Conn, May 1, 2020) ordering defendants release from FCI Schuylkill, United States v. Echevarria, No: 17-CR-44 2020 WL 211 3604 at *2 (D. Conn. May 4, 2020) (ordering defendant released from FCI Allenwood, which at the time reported no cases of COVID-19. FCI Schuylkill has been in a massive outbreak for months now with inmates getting the virus twice, affecting operations.

The government must consider post-conviction behavior and record. These circumstances include post-sentencing developements such as health issues and rehabilitation arguments as are raised here.

See United States v. Hudson, 967 F. 3d at 675 ("having concluded that the 3553 (a) factors apply in the 404 (b) context, post-sentencing evidence 'may' be highly relevant to several of (those) factors.") (Quoting Pepper v. United States, 562 U.S. 476, 491 (2011); Williams, 943 F. 3d. at 844, (" A district court may consider evidence of a defendants post-sentencing rehabilitation at resentencing.") In considering the 3553 factors, the Movant is not a danger to others or the community because although, he has not committed a crime of violence, he knows and understands the severity of his crime.

Movant will be subject to supervision by the Federal Probation Office for at least (3) years. During this time, the probation office will utilize evidence-based strategies to address (Movants) criminogenic factors, including criminal peers, low-self esteem, anti-social values, and criminal thinking in an effort to reduce his risk of recidivism and support his successful rehabilitation; consequently, others and the community will be doubly protected from any criminal tendancies Movant may have remaining. United States v. Barber, No: 6-18-CR-00446, AA 2020 WL 2404679 at, *6 (D. Or. May 12, 2020).

("[I]mposing an extended condition of home confinement and regular status conferences in this case will be sufficient to ensure that Movant will not reoffend".) The court must also find Movants release would comply with the purposes set forth in 3553 (a)(2). The "[p]otentially relevant factors include, (1) The nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence to reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the defendants crime; (3) the need for the sentence to protect the public from further crimes by the defendant; (4) the need to avoid unwarranted sentence disparities among similarly situated defendants," Rountree, 2020 WL 2610923 at, * 10, citing 18 U.S.C. 3553 (a).

An analysis of these section 3553(a) factors support a reduction of Movants Term of Imprisonment to Time Served.

First, the court found a term of imprisonment of 57 months was sufficient, but not greater than necessary to further the sentencing goals of 3553 (a). However, at the time in January 1, 2020, the COVID-19 pandemic, Movants underlying medical conditions, which placed him at (5) times greater risk of suffering the most severe side effects of the virus and the current COVID-19 spread in BOP facilities, could not have been imagined by the court as part of it's section 3553 (a) analysis.

If those factors had been considered, Movant submits a 57 month sentence would have been greater than necessary to comply with purposes of sentencing because "[t]he court never intended for (his) sentence to include incurring a great and unforseen risk of severe illness or death brought on by a global pandemic." Rountree, 2020 WL 2610923 at, *11. Movant serving the remaining portion of his term of imprisonment on home confinement allows him to continue to repay his debt to society, impose an adequate punishment and promotes respect for the rule of law." United States v. Vasquez Torres, No; 19-CR-20342 BLOOM, 2020 WL 4019038 at, *4 (S.D. Fla. July 14, 2020) and see also, United States v Massingille, No: 16 CR-20193, 2020 WL 4569562 at, *7, (Aug. 7, 2020) (Home confinement places additional restraints on the defendants liberty, and with time already served, satisfies the goals of imposing sufficient punishment).

In addition, "[A]s. recognized by the National Institute of Justice, increasing the severity of punishment does little to deter crime." United States v Pabon, No: 17-165-1, 2020 WL 2112265 at, *8 (E.D. Pa May 4, 2020) and see also, Barber,2020 WL 2404679 at, *5, quoting United States v. Perez, 17-CR-513-3 (AT) 2020 WL 1546422 at, *4 (S.D.N.Y. Apr. 1, 2020) ("The benefits of keeping the defendant in prison for the remainder of his sentence are minimal, and the potential consequences of doing so are extraordinarilly grave.")

Movants release will produce unwarranted sentencing disparities because it accounts for his unique medical condition in consideration of the COVID-19 pandemic.

Thus granting the requested relief is consistant with and supported by the 3553 (a) factors. See United States v. Rahim M.D. No: 16-20433, 2020 WL 2604857 at, *4 (E.D. Mich. May 21, 2020)

Because of the COVID-19 pandemic and serious risk to Movant because of his underlying medical condition, serving a large portion of his sentence on home confinement, See United States v. Young, No: CR-19-5055 BHS, 2020 WL 2614745 (W.D. Wash, May 22,2020) Movant has a viable release plan, should the court grant his motion and order immediate release of the Movant, he proposes to reside with his wife and children at 46 Schafer Rd. Maplewood, N.J. 07040. The home is readily accessible to public transportation in order that Movant will be able to meet his Probation Officer at the U.S. Probation Office.

Movants (3) years of supervised release may be extended by the court to an amount equal to the remaining portion of his unserved Term of Imprisonment. See generally Barber, 2020 WL 2404679 at, * 6, (in granting the request for compassionate release, " the court (may) order the defendant to be placed on home confinement for the remainder of his original term of imprisonment, which may run the entire term of his supervised release. This can provide added assurance that others and the community will be protected.) See Echevarria, WL 2113604 at, *3.

Movant has been a model prisoner for his entire incarceration and has a minimum risk for recidivism. Movant requests this Honorable Court to modify his Term of Imprisonment to time served because there are extraordinary and compelling reasons to warrant such a reduction pursuant to 18 U.S.C. 3582 (c)(1)(A).

Specifically, due to COVID-19 spreading out of control in correctional and detention facilities throughout the United States and Movants documented underlying medical condition. The strongest and most scientific evidence recognized by the CDC concludes Movant is at a far greater risk due to his underlying medical condition.

Internal guidance issued by the Department of Justice on May 18, 2020, directs the government to concede defendants who have certain risk factors enumerated by the CDC constitutes an "extra ordinary and compelling" reason to warrant reduction in sentence under 18 U.S.C. 3582.

See United States v. Albert M. Firebaugh, IV. No: 16-20342-CR-UU, Ecf No: 43-1 (S.D. Fla. June 1, 2020) The concession by the government is likely due to the weight of the "science" recommending testing and social distancing, and the BOP's failure to implement adequate safeguards in it's facilities. Finally, numerous district courts have found chronic medical conditions, including high blood pressure...qualify as a compelling reason for compassionate release in light of the current COVID-19 pandemic. See United States v. Readus, No: 16-20827-1, 2020 WL 2572280 at *3 (E.D. Mich. May 21, 2020) Courts have found that hypertension and obesity, United States v. Forman, 3:19-CR-63 (VAB), 2020 WL 2315908 at, *4 (D. Conn. May. 11,2020) finding that high blood pressure satisfied the extraordinary and compelling reason); and United States V. Ullings, No; 1:10-CR-0046 2020 WL 2394096 at *4 (N.D. Ga. May 12, 2020) finding defendants high blood pressure and obesity satisfied an extraordinary and compelling reason.

## CONCLUSION

Based upon all the foregoing, and the arguments set forth in this Motion, Movant respectfully ask's the court to grant the same because; (A) it is undisputed there is an extraordinary and compelling reason to permit his release due to the recognized and documented underlying medical condition; (B) he is not a danger to others or the community because the offense of conviction was non violent, he has been a model inmate throughout his imprisonment; (C) an extended term of supervised release is consistent with the rules under 3553 (a).

WHEREFORE, the Movant respectfully ask's this Honorable Court to grant his Motion Pursuant to 3582 (c)(1)(A).

2/21/21
Dated

Respectfully Submittes,
Daniel Kusi

Daniel Kusi
SPC Schuylkill
P.O. Boc 670
Minersville, PA 17954

Certificate Of Service

I Daniel Kusi place into the U.S. Mail at SPC Schuylkill, P.O. Box 670 Minersville, PA 17954, One original and true Motion For Compassionate Release Pursuant To 18 U.S.C. 3582 (c)(1)(A). Sent to the, Clerk of Court, Martin Luther King Jr. Federal Bldg. & U.S. Courthouse. 50 Walnut Street, Room 4015, Newark, N.J. 07102

2/21/21

Dated

Daniel Kusi

Daniel Kusi
SPC Schuylkill
P.O. Box 670
Minersville, PA 17954

KUSI, Daniel
Reg. No. 71466-050
Camp 1
Request to Staff Response
Page 1 of 2

RESPONSE

This is in response to your Request to Staff received on September 3, 2020, in which you request Compassionate Release.

Title 18 of the United States Code, section 3582(c)(1)(A), allows a sentencing court, on motion of the Director of the BOP, to reduce a term of imprisonment for extraordinary or compelling reasons. BOP Program Statement No. 5050.50, Compassionate Release/Reduction in Sentence(RIS): Procedures for Implementation of 18 U.S.C. §§ 3582(c)(1)(A) and 4205(g), provides guidance on the types of circumstances that present extraordinary or compelling reasons, such as the inmate's terminal medical condition; debilitated medical condition; status as a "new law" elderly inmate, an elderly inmate with medical conditions, or an "other elderly inmate"; the death or incapacitation of the family member caregiver of the inmate's child; or the incapacitation of the inmate's spouse or registered partner. Your request has been evaluated consistent with this general guidance.

You have not provided all of the required information and documentation for a Compassionate Release request under Program Statement, 5050.50. Specifically, you did not include a proposed release plan, including where you will reside, how you will support yourself, and, if health related, information on where you will receive medical treatment, and how you will pay for such treatment. Accordingly, your Compassionate Release/RIS request is denied at this time.

The BOP is taking extraordinary measures to contain the spread of the Coronavirus and treat any affected inmates. We recognize that you, like all of us, have legitimate concerns and fears about the spread and effects of the virus. Currently, section 12003(b)(2) of the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act") grants discretion to the BOP to place inmates on home confinement for a longer term under 18 U.S.C. 3624(c)(2). The BOP's discretion is guided by criteria listed in memoranda from the Attorney General.

Exhibit "A"

KUSI, Daniel
Reg. No. 71466-050
Camp 1
Request to Staff Response
Page 2 of 2

After a complete review of your circumstances, we have determined you have not served fifty percent or more of your sentence which disqualifies you from consideration as a priority placement. Your request for home confinement based on concerns regarding COVID-19 is denied.

If you are not satisfied with this response to your request, you may commence an appeal of this decision via the administrative remedy process by submitting your concerns on the appropriate form (BP-9) within 20 days of the receipt of this response.

Scott Finley, Warden

Date 09/18/20

"A"

KUSI, Daniel
Reg. No. 71466-050
Unit Camp 1
Remedy ID# 1049165-F1

---

RESPONSE

This is in response to your Inmate Request for Administrative Remedy received on September 25, 2020, wherein you appeal the denial of your request for Compassionate Release.

Title 18 of the United States Code, section 3582(c)(1)(A), allows a sentencing court, on motion of the Director of the BOP, to reduce a term of imprisonment for extraordinary or compelling reasons. BOP Program Statement No. 5050.50, Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 3582(c)(1)(A) and 4205(g), provides guidance on the types of circumstances that present extraordinary or compelling reasons, such as the inmate's terminal medical condition; debilitated medical condition; status as a "new law" elderly inmate, an elderly inmate with medical conditions, or an "other elderly inmate"; the death or incapacitation of the family member caregiver of the inmate's child; or the incapacitation of the inmate's spouse or registered partner. Your request has been evaluated consistent with this general guidance.

Review reveals your medical history does not meet criteria, as stated above, regarding a Compassionate Release/RIS for inmates with medical conditions. You are currently able to independently adapt to activities of daily living and are able to perform self-maintenance activities in a correctional environment.

The BOP is taking extraordinary measures to contain the spread of COVID-19 and treat any affected inmates. We recognize that you, like all of us, have legitimate concerns and fears about the spread and effects of the virus. However, your concern about being potentially exposed to, or possibly contracting, COVID-19 does not currently warrant an early release from your sentence.

Accordingly, your Request for Administrative Remedy is denied.

In the event you are not satisfied with this response and wish to appeal, you may do so within 20 calendar days of the date of this response by submitting a BP-230(10) to the Regional Director, Federal Bureau of Prisons, Northeast Regional Office, U.S. Customs House, 2nd and Chestnut Street, Philadelphia, PA 19106.

[signature]
Scott Finley, Warden

10/09/20
Date

Exhibit "B"

U.S. Department of Justice

Federal Bureau of Prisons

**Regional Administrative Remedy Appeal**

CD 10/23/2020

Type or use ball-point pen. If attachments are needed, submit four copies. One copy of the completed BP-DIR-9 including any attachments must be submitted with this appeal.

From: Kusi Daniel (LAST NAME, FIRST, MIDDLE INITIAL) 71466-050 (REG. NO.) Camp #2 (UNIT) FPC Schuylkill (INSTITUTION)

**Part A—REASON FOR APPEAL** The reason for this appeal, is due to the Warden's denial of my 9-3-2020 request for Compassionate Release. As well as the denial of my appeal dated 10-9-2020 by Warden Finley.

10/26/2020
DATE

Daniel Kusi
SIGNATURE OF REQUESTER

**Part B—RESPONSE**

Exhibit C

DATE

REGIONAL DIRECTOR

If dissatisfied with this response, you may appeal to the General Counsel. Your appeal must be received in the General Counsel's Office within 30 calendar days of the date of this response.

ORIGINAL: RETURN TO INMATE

CASE NUMBER: ____________

**Part C—RECEIPT**

CASE NUMBER: ____________

Return to: ____________
LAST NAME, FIRST, MIDDLE INITIAL REG. NO. UNIT INSTITUTION

SUBJECT: ____________

DATE

SIGNATURE, RECIPIENT OF REGIONAL APPEAL

BP-230(13)
APRIL 1982

U.S. DEPARTMENT OF JUSTICE
Federal Bureau of Prisons

**REQUEST FOR ADMINISTRATIVE REMEDY**

*Type or use ball-point pen. If attachments are needed, submit four copies. Additional instructions on reverse.*

From: KUSI DANIEL (LAST NAME, FIRST, MIDDLE INITIAL) — 71466050 (REG. NO.) — 2 (UNIT) — Schuylkill (INSTITUTION)

**Part A- INMATE REQUEST**

I am appealing the denial of Warden Finley's denial dated 9/18/20 of my 9/3/20 request for Compassionate Release. I will reside with my wife and children in New Jersey upon release and will quaratine in the basement. I will support my Self by resuming my duties at my former Employer's office and my wife and family will help me with medicade, until I'm placed on a plan. Furthermore, I have high blood pressure which is on the CDC list, which put me at high-risk for severe illness from COVID-19 if contracted. The medication I take is amLODIPine 10mg Tab.

9/25/20
DATE

Daniel Kusi
SIGNATURE OF REQUESTER

**Part B- RESPONSE**

FCI Schuylkill
SEP 25 2020
Warden's Office

Exhibit D

DATE

WARDEN OR REGIONAL DIRECTOR

*If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.*

**ORIGINAL: RETURN TO INMATE**

CASE NUMBER: 1049165-F1

CASE NUMBER: ____________

**Part C- RECEIPT**

Return to: ____________
LAST NAME, FIRST, MIDDLE INITIAL — REG. NO. — UNIT — INSTITUTION

SUBJECT: ____________

DATE

RECIPIENT'S SIGNATURE (STAFF MEMBER)



PRINTED ON RECYCLED PAPER

BP-229(13)
APRIL 1982

**Individualized Needs Plan - Program Review (Inmate Copy)** SEQUENCE: 02210910

Dept. of Justice / Federal Bureau of Prisons Team Date: 12-29-2020

Plan is for inmate: KUSI, DANIEL 71466-050

| | | | |
|---|---|---|---|
| Facility: | SCH SCHUYLKILL FCI | Proj. Rel. Date: | 07-11-2024 |
| Name: | KUSI, DANIEL | Proj. Rel. Mthd: | GCT REL |
| Register No.: | 71466-050 | DNA Status: | SCH04742 / 07-17-2020 |
| Age: | 42 | | |
| Date of Birth: | [redacted]1978 | | |

**Detainers**

| Detaining Agency | Remarks |
|---|---|

*NO DETAINER*

**Current Work Assignments**

| Facl | Assignment | Description | Start |
|---|---|---|---|
| SCH | UNICOR 1 | UNICOR 1 | 08-01-2020 |

**Current Education Information**

| Facl | Assignment | Description | Start |
|---|---|---|---|
| SCH | ESL HAS | ENGLISH PROFICIENT | 06-30-2020 |
| SCH | GED HAS | COMPLETED GED OR HS DIPLOMA | 06-30-2020 |

**Education Courses**

| SubFacl | Action | Description | Start | Stop |
|---|---|---|---|---|
| SCH | | ACE CLIMATE CHANGE | 12-07-2020 | CURRENT |
| SCH | | ACE EMAIL BASICS | 12-15-2020 | CURRENT |
| SCH | | MIND STRENGTH | 12-15-2020 | CURRENT |
| SCH | | ACE US CITIZENSHIP TEST | 12-15-2020 | CURRENT |
| SCH | | CAMP VT HORTICULTURE AM | 09-21-2020 | CURRENT |
| SCH SCP | C | ACE MANIFEST DESTINY | 11-17-2020 | 11-17-2020 |
| SCH SCP | C | WORLD'S GEOLOGICAL WONDERS 3 | 10-29-2020 | 10-29-2020 |
| SCH SCP | C | SELF STUDY EARTH SCIENCE | 10-15-2020 | 10-15-2020 |
| SCH SCP | C | SELF STUDY WORLD WAR I | 10-15-2020 | 10-15-2020 |
| SCH SCP | C | SELF STUDY SOLAR SYSTEM | 10-15-2020 | 10-15-2020 |
| SCH SCP | C | SELF STUDY MALE SPORTS STARS | 10-13-2020 | 10-13-2020 |
| SCH SCP | C | SELF STUDY AA HISTORY | 10-13-2020 | 10-13-2020 |
| SCH SCP | C | WORLD WAR 2 | 10-08-2020 | 10-08-2020 |
| SCH SCP | C | ACE AMERICAN INDIAN WARS | 10-06-2020 | 10-06-2020 |

**Discipline History (Last 6 months)**

| Hearing Date | Prohibited Acts |
|---|---|

*** NO INCIDENT REPORTS FOUND IN LAST 6 MONTHS ***

**Current Care Assignments**

| Assignment | Description | Start |
|---|---|---|
| CARE1 | HEALTHY OR SIMPLE CHRONIC CARE | 07-14-2020 |
| CARE1-MH | CARE1-MENTAL HEALTH | 06-26-2020 |

**Current Medical Duty Status Assignments**

| Assignment | Description | Start |
|---|---|---|
| C19-ISOL | COVID-19 ISOLATION-SYMPTOMS | 12-23-2020 |
| C19-T NEG | COVID-19 TEST-RESULTS NEGATIVE | 06-29-2020 |
| REG DUTY | NO MEDICAL RESTR--REGULAR DUTY | 07-14-2020 |
| YES F/S | CLEARED FOR FOOD SERVICE | 07-14-2020 |

**Current Drug Assignments**

| Assignment | Description | Start |
|---|---|---|
| ED NONE | DRUG EDUCATION NONE | 06-29-2020 |

**FRP Details**

| Most Recent Payment Plan |
|---|

# Individualized Needs Plan - Program Review (Inmate Copy)

SEQUENCE: 02210910

Dept. of Justice / Federal Bureau of Prisons

Team Date: 12-29-2020

Plan is for inmate: KUSI, DANIEL 71466-050

## Most Recent Payment Plan

**FRP Assignment:** **PART** **FINANC RESP-PARTICIPATES** **Start: 06-29-2020**

Inmate Decision: **AGREED** **50%** Frequency: **MONTHLY**

Payments past 6 months: **$185.96** Obligation Balance: **$94,350.03**

**Financial Obligations**

| No. | Type | Amount | Balance | Payable | Status |
|---|---|---|---|---|---|
| 1 | ASSMT | $1,300.00 | $1,114.04 | IMMEDIATE | AGREED |

| Adjustments: | Date Added | Facl | Adjust Type | Reason | Amount |
|---|---|---|---|---|---|
| | 12-10-2020 | SCH | PAYMENT | INSIDE PMT | $70.03 |
| | 11-10-2020 | SCH | PAYMENT | INSIDE PMT | $55.02 |
| | 10-14-2020 | SCH | PAYMENT | INSIDE PMT | $35.91 |
| | 09-12-2020 | SCH | PAYMENT | INSIDE PMT | $25.00 |

| No. | Type | Amount | Balance | Payable | Status |
|---|---|---|---|---|---|
| 2 | REST NV | $93,235.99 | $93,235.99 | IMMEDIATE | AGREED |

*** NO ADJUSTMENTS MADE IN LAST 6 MONTHS ***

**Payment Details**

Trust Fund Deposits - Past 6 months: $2,356.96 Payments commensurate ? Y

New Payment Plan: ** No data **

## Progress since last review

Successfully maintained clear conduct.
Made all required FRP payments.
Currently enrolled in 4 Ace courses and the VT Horticulture program.

## Next Program Review Goals

Maintain clear conduct.
Complete courses your currently enrolled in by May 2021.
Complete the Parenting 1/2 courses by June 2021.

## Long Term Goals

Complete the AARP Foundation Finances course by August 2021.

## RRC/HC Placement

No.
Management decision - Placement is reviewed at 17-19 months from release..

## Comments

Next review will be held by June 26, 2021.

…670
PA 17954

U.S. POSTAGE PAID
FCM LG ENV
MINERSVILLE, PA
17954
FEB 23, 21
AMOUNT
$0.00
R2305K141057-10

UNITED STATES POSTAL SERVICE
1000
07102

XRAYED

CLERK OF COURT
Martin Luther King Jr. Federal Bldg.
U.S. Courthouse.
50 walnut Street, Room 4015
Newark, N.J. 07102